FILSON *v.* CRAWFORD *et al.*

(*Supreme Court, Special Term, New York County.* May 24, 1889.)

1. NUISANCE—WHAT CONSTITUTES.
    Several witnesses testified that the noise caused by the stamping of horses in defendants' stable could be plainly heard in plaintiff's house, and the occupants testi-

fied that they had been seriously annoyed by such noise, especially at night-time. They and others also testified that offensive odors, coming from the stable, were plainly perceptible in plaintiff's house, and other houses more distant, even in winter, when windows and doors were usually closed. The preponderance of testimony was that the maintenance of the stable depreciated the value of plaintiff's house. *Held*, that the maintenance of the stable was an actionable nuisance, though several witnesses testified that they heard little or no noise, and perceived no odors, or no offensive odors, coming from the stable.

2. SAME—INJUNCTION—DEFENSES.

It is no defense to an action to restrain such nuisance that the stable is properly built, managed, and kept.

3. SAME.

Nor is it a defense that a smaller stable, occupying a portion of defendants' premises, caused as much annoyance as the larger one, or that the smaller stable was there before plaintiff's house was built.

4. SAME.

Nor is it a defense that the location selected for the stable is a desirable and convenient one, where it appears that other locations, not far away, could have been bought for a less price than defendants paid, and that, on learning that defendants proposed to erect the stable, plaintiff notified them that she should take legal measures to restrain them from doing so.

5. SAME—PARTIES.

Where defendants' building is large and expensive, constructed expressly for a stable, and it appears that it could not well be used for any other purpose, the fact that plaintiff has let her house for a term of years, and is not in possession, will not preclude her from maintaining an action to restrain its erection, as it sufficiently appears that it will injure the fee of plaintiff's property.

6. SAME.

But when, after bringing the action, plaintiff parts with her title to her property, and it does not appear that she reserved her claim because of the injury to the fee by defendant's stable, nor that the damages to the fee can be ascertained, she cannot maintain the action.

Action by Ella J. Filson against George Crawford and Philip Hauseman, to restrain a nuisance.

*Hornblower & Byrne*, for plaintiff.    *Deyo, Duer & Bauerdorf*, for defendants.

ANDREWS, J.    It is not necessary for the disposition of this case to decide whether a livery or boarding stable is or is not *per se* a nuisance.    There can be no question that if such a stable is so kept and used as to destroy the comfort of persons occupying adjoining premises, and impair their value as places of habitation, it becomes an actionable nuisance.    *Dargan* v. *Waddell*, 9 Ired. 244.    In the present case I am of the opinion that the plaintiff has established by a fair preponderance of evidence that the defendants' stable is a nuisance.    Several witnesses testify that the noise caused by the stamping of horses in the stable can be plainly heard in plaintiff's house, and the occupants of that house testify that they have been seriously disturbed and annoyed by such noise, especially in the night-time.    The occupants of the plaintiff's house, and other persons who have been in it, also testify that the odors coming from the defendants' stable are perceptible in plaintiff's house to such degree as to be offensive.    There is also evidence that such noises can be heard, and such odors perceived, in other houses in Seventy-Third street which are more distant from the stable than the house of plaintiff.    The testimony so given relates principally to the past winter, when the windows and doors of the stable and of the dwelling-houses in the vicinity were usually kept closed, and it may be fairly claimed that, if such noises and smells have caused serious annoyance and discomfort in the winter time, they will necessarily cause much greater annoyance and discomfort during the warm weather, when the windows of the stable and of such dwelling-houses will undoubtedly be kept open a considerable portion of the time.    Several witnesses have been called for the defendants who testify that they went into plaintiff's house and listened, but heard little or no noise from the stable, but this negative testimony cannot prevail against the positive evidence of a number of witnesses,

who swear that the noises from the stable were plainly audible in the house. Witnesses were also called for the defendants, who testify either that no odors came from the stable, or that such as did come were not disagreeable to them, but the testimony of these witnesses is of little weight as against those called by the plaintiff, who testify as to the existence of the odors, and to their disagreeable character. The evidence in regard to the effect upon the value of the plaintiff's house and other property of the existence of defendants' stable is to some extent conflicting, but I think it is fairly proven by a preponderance of testimony that the erection and maintenance of defendants' stable has seriously depreciated the rental value, and the value of the fee, of plaintiff's house, and of other houses in Seventy-Third street.

It is no defense to this action that the defendants' stable is well and properly built, and is properly kept and managed. Wood, Nuis. § 527.

Nor can it avail them as a defense that the smaller stable, occupying a portion of their premises caused as much annoyance as the present stable, or that such other stable was in existence before plaintiff's house was built. *Brady* v. *Weeks*, 3 Barb. 157; *Chapman* v. *City of Rochester*, 110 N. Y. 273, 18 N. E. Rep. 88; *Leonard* v. *Spencer*, 108 N. Y. 338, 15 N. E. Rep. 397.

Nor can the defendants protect themselves under the plea that the location selected for their stable was a desirable one, and furnished accommodations which were a convenience to some persons who lived in the vicinity. It would doubtless be a desirable arrangement for many persons engaged in keeping livery or boarding stables, and also be convenient for some of their customers, if such stables could be located upon every block in the finest street in the city, but it will hardly be claimed that stables should be so located, when the inevitable result would be to cause incalculable injury to the adjoining property. The evidence shows that there were numerous other places, not far from the location selected by the defendants, which could have been purchased for stable purposes, and at less prices than that which was paid by defendants for the property upon which their stable is now located. The evidence shows that Seventy-Second and Seventy-Third streets are two of the finest streets on the west side of the city, and it seems to me that the use of the property purchased and owned by the defendants for a stable, which is so kept as to be a nuisance, is most unreasonable. There is no evidence that the plaintiff acquiesced in such use, but, on the contrary, it appears that she and other owners of property in Seventy-Third street protested against the erection of the stable as soon as they learned that the defendants had bought the property, and were proposing to erect the same, and also notified the defendants that they should resort to legal measures to restrain them from erecting and maintaining the stable.

The next question which arises is, assuming that the defendants' stable is a nuisance, what relief, if any, can the plaintiff obtain in this action? It is objected that the plaintiff cannot maintain the action, because the premises were leased by the plaintiff before the stable was erected, and such lease has not yet expired. It appears by the testimony that Van Bergen went into possession on May 1, 1888, under a lease which will not expire for three years from that date, the rent being $1,600 for the first year, $1,700 for the second year, and $1,800 for the third year. It is a general rule that a person injuriously affected by a nuisance cannot maintain a bill in equity for an injunction, unless he could maintain an action in a court of law for damages. Wood, Nuis. § 783. It is a general rule that if the nuisance is not of a permanent character, or does not produce a permanent injury to the property, the owner of the fee, except in certain cases, cannot maintain an action at law, when the property is in the possession of a tenant under a lease for a term, whether long or short. Id. § 816. The landlord can, however, maintain an action at law, if, in consequence of the nuisance, he is prevented from renting his premises, or if he is compelled to rent them at a less price than he could obtain but

for the existence of the nuisance, or if the actual value of the property is thereby impaired. Id. § 817.

This action was brought to restrain the erection of the stable before it was completed, and was based upon allegations that the building, when completed and kept as a stable, would be a nuisance. There certainly was reasonable ground for the plaintiff to anticipate that there would be an injury to the fee of her property, and that she would not be able to rent her house upon the expiration of the present lease at as high a price as she could but for the existence of the stable. The building was to be and is large and expensive, and, being constructed expressly for the purpose of a stable, it was evident that it could not well be used for any other purpose. It is now claimed on behalf of the defense that the building was put up in the best possible manner, and that it has been kept as well as it could be. Therefore no improvement can be anticipated, and the apprehensions entertained by the plaintiff when she brought her action have been realized. The stable is a nuisance, and so long as it is kept in the manner in which it has hitherto been it will continue to be a nuisance, and doubtless affect the value of the fee of plaintiff's property, and also the rental value. Under these circumstances, I think the fact that the plaintiff is not in possession of the property presents no obstacle to her maintaining this action.

There is, however, another objection which has been raised, as to the right of the plaintiff to bring this action, which to my mind is a much more serious one. It appears by the supplemental complaint, and the evidence given thereunder, that since the action was brought the plaintiff has sold her property for the sum of $26,000, and no longer has any interest in it. It is claimed that for this reason she can have no relief in this action by way of a permanent injunction. It is clear that plaintiff has suffered no injury to the rental value, because the lease to Van Bergen was made before defendants' stable was erected, and such lease will not expire until May 1, 1891. It is also clear that the plaintiff cannot have an injunction in this action to restrain the defendants from maintaining this stable, upon the ground that the maintenance of the stable will hereafter cause her any loss by diminishing the fee value of the property. Having parted with the fee, any injury hereafter done to it by diminishing its value can not affect the plaintiff. The plaintiff having sold the property, the question of her right to recover damages for depreciation of the fee value of the property, caused by the erection and maintenance of the defendants' stable, is by no means free from difficulty.

The learned counsel for the plaintiff places great reliance upon the case of *Henderson* v. *Railroad Co.*, 78 N. Y. 423. It does not seem to me, however, that that case can be regarded as an authority decisive of the present case. In that case the original plaintiff died pending the litigation, which lasted for many years, and his executors and residuary devisees and legatees were substituted as plaintiffs. It also appeared that when plaintiff sold his property his claim for damages, caused by reason of the acts of the defendant, was expressly reserved. It also appeared that the damages done by the railroad were clearly of a permanent character; the street in front of the defendant's land having been cut down, and railroad tracks placed thereon. Moreover, the street in front of the plaintiff's land was taken for a *quasi* public use by a railroad corporation, which had a right to condemn the property, and there would seem to be no doubt but that on payment of damages to the plaintiffs, who were substituted in place of the original plaintiff, the railroad acquired the right, as against all the world, and for all time, to use the street for the purpose of its business. In the present case the plaintiff, pending the litigation, has sold her property to a stranger. So far as appears before me, her claim on account of depreciation of the fee value of the property, caused by defendant's stable, was not expressly reserved. The damages to the fee of her property are not necessarily permanent. The stable of the defendants may burn down,

or its use as a stable may be discontinued, or it may be kept and maintained in such a way as not hereafter to be a nuisance. Moreover, if the stable shall hereafter be kept in the manner in which it heretofore has been, the nuisance will be continuing, and payment to the plaintiff of the damage heretofore done to the fee value will not give the defendants the right to maintain it, as against any one but the plaintiff, and the present or any subsequent tenant can maintain an action to abate the stable as a nuisance, and obtain an injunction restraining the defendants from maintaining it. It will thus be seen that the differences between the situation in the *Henderson Case*, and in the present case are so great that that case cannot be regarded as an authority.

Neither do the decisions in actions relating to patents, cited by plaintiff's counsel, appear to be applicable. In those cases the liability for damages caused by infringement of patents, prior to the bringing of the actions, was fixed, and the exact amount of the damages was ascertainable; and the fact that the patent expired pending the litigation plainly afforded no reason why plaintiffs should not recover damages incurred before the expiration of the patents. In the present case it is by no means clear that the damages caused to the fee value of plaintiff's property can be now fixed or ascertained. If the nuisance caused by the stable should be abated to-morrow, it certainly cannot be claimed that the plaintiff ought to-day to recover from the defendants the entire difference between the value of the property with the stable and the value which her property would have without it. While the stable, like a tenement-house or factory, may be objectionable, and seriously injure the value of other neighboring property, many stables are undoubtedly kept in large cities in such a manner that they cannot be regarded in law as nuisances. But, however this may be, I do not see how the defendants can be compelled to pay for the entire alleged depreciation of the fee value of the plaintiff's property, when, the plaintiff having sold the property, they will acquire no right, as against the purchaser, to maintain their stable in the future. If the plaintiff were still the owner, it is difficult to see what relief she could have in this action, except an injunction to restrain defendants from continuing the nuisance; but, even if she could have recovered damages for injury to the fee value, inasmuch as she has sold her property I do not think that she can obtain any relief at all in this action, and this conclusion seems to be sustained by the authorities. *Francis* v. *Schoellkopf*, 53 N. Y. 155; *Beir* v. *Cooke*, 37 Hun, 38. The complaint must be dismissed, with costs.