IN THE MATTER OF THE APPLICATION OF LEGRANGE E. SCRAFFORD FOR A WRIT OF HABEAS CORPUS.

*Rendition of a criminal to another State — an order discharging the accused is appealable — presumption of regularity, in the absence of the papers under which the warrant was issued by the Governor.*

An order, made by a special county judge declaring a rendition warrant issued by the Governor insufficient, and discharging the party named therein from the custody of the sheriff and from further imprisonment and restraint, is appealable to the General Term.

A warrant issued by the Governor of the State of New York, in which it is recited as follows:

"Whereas, It has been represented to me by the Governor of the State of Pennsylvania, that Le Grange E. Scrofford stands charged with the crime of removing his property to prevent the same from being levied upon by execution, which he certifies to be crime under the laws of said State, committed in the county of Potter in said State, and that he has fled from justice in said State and has taken refuge in the State of New York, and that said Governor of the State of Pennsylvania, pursuant to the Constitution and laws of the United States, demanded of me that I shall cause the said Le Grange E. Scrofford to be arrested and delivered to William Dannells, who is duly authorized to receive him into his custody and convey him back to the said State of Pennsylvania, and

"Whereas, The said representation and demand is accompanied by the papers required by the statute of the United States to justify a surrender of, and whereby the said Le Grange E. Scrofford is shown to have been duly charged with, the said crime and with having fled from said State and taken refuge in the State of New York, which are duly certified by the said Governor of the State of Pennsylvania to be authentic and duly authenticated."

"Therefore you are required," etc., is sufficient upon its face.

It is the duty of a court before which the party mentioned in such a warrant is brought upon a return to a writ of *habeas corpus*, in the absence of any proof as to the contents of the papers upon which the Governor acted in issuing the same, to assume that such recitals are true and sufficient, and to refuse to discharge the prisoner held thereunder.

APPEAL by the People of the State of New York from a final order made in the above-entitled matter by Hon. W. F. DUNMORE, Special County Judge of Oneida county, at his chambers in the city of Utica, August 21, 1890, and entered in the office of the clerk of Oneida county on August 23, 1890, discharging one Legrange E. Scrafford from the custody of the sheriff of Oneida county, and from further imprisonment and restraint, under and by

virtue of a warrant issued by the Governor of the State of New York, upon a requisition made by the Governor of the State of Pennsylvania.

The appeal was brought to argument and at the same time a motion was submitted in behalf of the defendant to dismiss the appeal. July 30, 1890, the defendant made his petition to the said special county judge for a writ of *habeas corpus*, and on the 30th of July, 1890, a writ was issued directed to the sheriff of Oneida county, requiring him to produce the defendant before the said judge on the 30th day of July, 1890. On that day the sheriff produced the defendant, in obedience to the writ, and made his return to the writ, in which he said " his authority for the taking of the said Legrange E. Scrofford into custody and the true cause of the imprisonment or restraint of the said Legrange E. Scrofford was and is by virtue of a mandate or warrant issued by the Hon. David B. Hill, Governor of the State of New York, for the crime charged to have been committed there in the State of Pennsylvania, of removing his property from the State of Pennsylvania, to prevent the same from being levied upon by execution, which is a crime under the laws of the State of Pennsylvania, committed in the county of Potter in said State of Pennsylvania. That he has fled from justice in said State of Pennsylvania and taken refuge in the State of New York." The return further set out " a copy of said mandate or warrant under which the said Scrofford is restrained and imprisoned," the recital in which was as follows :

" It has been represented to me by the Governor of the State of Pennsylvania that Le Grange E. Scrofford stands charged with the crime of removing his property to prevent the same from being levied upon by execution, which he certifies to be crime under the laws of said State, committed in the county of Potter in said State, and that he has fled from justice in said State and has taken refuge in the State of New York, and that said Governor of the State of Pennsylvania having, in pursuance of the Constitution and laws of the United States, demanded of me that I shall cause the said Le Grange Scrofford to be arrested and delivered to Wm. Dannells, who is duly authorized to receive him into his custody and convey him back to the said State of Pennsylvania, and whereas the said

representation and demand is accompanied by the papers required by the statute of the United States to justify a surrender of, and whereby the said Le Grange Scrofford is shown to have been duly charged with the said crime and with having fled from said State and taken refuge in the State of New York, which are duly certified by the said Governor of the State of Pennsylvania to be authentic and duly authenticated."

To that return the defendant made an answer, in which he denied " that the governor's warrant returned by the said sheriff is a valid instrument or warrant, and denies that the said sheriff was justified in arresting and retaining this relator thereon, and avers that the said governor's warrant was improvidently granted without the requirements provided by law or proof sufficient to sustain the same or to warrant its issuance, and is irregular, null and void." The answer also stated several other facts, and was verified July 30, 1890.

Counsel for the respective parties appeared before the special county judge on the return of the writ of *habeas corpus* and a hearing was had, and thereafter the proceedings were adjourned until July thirty-first. The parties again appeared and the defendant's counsel insisted that it was the duty of the sheriff to produce the papers on which the warrant was issued. The counsel in behalf of the people insisted "that it was the duty of the prisoner to produce the papers if they wanted to go back of the warranty." Thereupon the judge held, viz., " that the sheriff had the affirmative, and that they rested if they did not make application to introduce further testimony." Thereupon the defendant's counsel moved that the prisoner be discharged. "After argument, motion for discharge of prisoner denied, to which defendant's counsel excepted." " Proceedings adjourned to August 18, 1890, 9 A. M., for the purpose of allowing prisoner to procure papers on which warrant was issued, if they could be produced." The parties again appeared on August eighteenth, and the defendant's counsel stated, viz., " the papers could not be produced." The counsel for the People asked leave " to file an amended return setting out a supplemental warrant, dated July 31, 1890." This was objected to by the defendant, and the objection sustained, and the motion was denied ; the sheriff took an exception. Defendant's counsel asked if sheriff had any further

evidence to introduce. "Sheriff's counsel said they had not, and rested their case on the governor's warrant." The judge held that " if there was any further evidence to be introduced he would receive it and consider all the points raised together at the end of the proceedings." To this ruling the defendant's counsel took an exception. Thereupon the defendant called two witnesses who gave evidence, and thereafter the defendant again moved for his discharge, and apparently the judge took time to consider and prepared an opinion, the termination of which is as follows, viz.: " We, therefore, hold that the warrant is invalid and the relator must be discharged."

*Charles F. Tabor*, attorney-general, and *I. H. Maynard*, for People, appellant.

*H. F. & J. Coupe*, for respondent Scrafford.

HARDIN, P. J.:

Article 3 in the Code of Civil Procedure prescribes the practice in regard to writs of *habeas corpus*. Section 2015 provides that a person imprisoned or restrained in his liberty is entitled to a writ of *habeas corpus*. Section 2017 provides that the application for the writ must be made by a written petition, and mentions the courts and officers who may allow the same. Section 2031 provides that the court or judge before whom the prisoner is brought "must, immediately after the return of the writ, examine into the facts alleged in the return, and into the cause of the imprisonment or restraint of the prisoner, and must make a final order to discharge him therefrom, if no lawful cause for the imprisonment or restraint, or for the continuance thereof, is shown." * * * Section 2058 provides, viz.: "An appeal may be taken from an order refusing to grant a writ of *habeas corpus* * * * or from a final order, made upon the return of such a writ, to discharge or remand a prisoner, or to dismiss the proceedings." Section 2059 provides, viz.: "An appeal from a final order, discharging a prisoner committed upon a criminal accusation, or from the affirmance of such an order, may be taken in the name of the People by the attorney-general or the district attorney." By section 1991 of the Code of Civil Procedure it is provided that a writ of *habeas corpus* and writs of *certiorari* " shall hereafter be styled, collectively, State writs ; " and by section 1995 of the Code of Civil Procedure it is provided that

parties to a special proceeding instituted by a State writ may appear by attorney; and that section further provides that "where the attorney-general or the district attorney does not appear for the people, the attorney for the relator is deemed also the attorney for the people." We are of the opinion that the order is appealable, and that the appeal was properly taken by the service of the notice of appeal upon the clerk and upon the attorneys of the defendant, and that the motion to dismiss the appeal should be denied. (Code of Civil Pro., § 1995; id., § 1300; id., § 799; 1 R. S. [8th ed.], § 1, tit. 5, chap. 8, pt. 1, p. 522; id., § 7, p. 523; Code of Civil Pro., § 2059.)

If, upon the warrant before the judge upon the return of the *habeas corpus*, the copy of an indictment against the defendant or the affidavits which were presented to the Governor, being the papers upon which he issued the rendition warrant, had been produced, the same might have been examined by the judge and an objection made by the defendant that they "were defective in not showing the nature, facts and circumstances of the transaction therein alleged and not disclosing the grounds upon which are based the allegations of illegality" might have been considered. In the case of *The People* v. *Brady* (56 N. Y., 184) it appears "the relator traversed this warrant, setting forth in his answer the affidavits which accompanied the requisition; and alleging, among other things, that the affidavits were defective, etc." The court, therefore, in that case looked into the affidavits which were used before the Governor and held they were insufficient. In the case before us the affidavits or papers presented to the Governor were not produced before the judge on the return of the writ of *habeas corpus*, and he derived no knowledge or information of their contents, and hence could not make an adjudication thereon; nor are the affidavits, papers or copy of indictment used before the Governor returned to us, and we are not in a situation to consider their contents and to determine from an inspection of the same whether they presented a proper case for the issuing of a rendition warrant or not. It is a familiar principle that a presumption obtains that a public officer has discharged his duty until the contrary appears. In *People ex rel. Draper* v. *Pinkerton* (17 Hun, 199) it was held, viz.: "Where a warrant is issued by the Governor for the rendition of a fugitive from justice, the court cannot go behind the warrant and inquire into the

truth of the facts recited in it. The Governor, in determining that the act of congress has been complied with, has no jurisdiction to inquire into the truth of the charges made, or to look outside of the papers presented, to determine whether or not the person demanded is a fugitive from justice. The fact that the person has committed a crime in another State establishes conclusively that he is a fugitive from justice." It was also said in that case that when " the rendition warrant is accompanied by the papers on which it issued the question as to the sufficiency of those papers, as a compliance with the Act of congress, is before the court." That case was approved by the Court of Appeals (77 N. Y., 245), and it was held that the " recitals in a warrant of the Governor of this State for the arrest of a fugitive from the justice of another State are to be taken, at least *prima facie*, as true." And it was further held in that case that a return to a writ of *habeas corpus* setting forth such a warrant " which contains recitals of facts necessary to confer authority, under the Constitution and laws of the United States, to issue it, is a sufficient justification for holding the prisoner, without producing the papers or evidence on which the Governor acted." It was made an inquiry in that case whether the warrant is conclusive and whether the defendant may not by evidence show that the papers presented to the Governor were, in fact, defective. If it be assumed in this case that the defendant should have produced the papers upon which the Governor acted before the judge, and upon their production it would have been shown defective and insufficient, the assumption cannot avail to the defendant, as the papers were not produced either by him or by the people, and the judge could not, therefore, determine as to their validity or insufficiency. In *People ex rel. Jourdan* v. *Donohue* (84 N. Y., 438) it was held, viz.: " Where the papers upon which a warrant of extradition is issued are withheld by the Executive, the warrant itself can only be looked to for the evidence that the essential conditions of its issue have been complied with, and it is sufficient if it recites what the law requires." In the opinion delivered in that case it was said : " Where, however, the papers upon which the warrant is founded are not produced, but are withheld by the Executive, in the exercise of official discretion and authority, we can look only to the warrant itself, and its recitals, for the evidence that the essential conditions of its issue have been fulfilled." (*People ex rel. Draper*

v. *Pinkerton*, 77 N. Y., 245.) In that opinion it was further said: "In this case, as in many others, the warrant only is produced and the papers on which it is founded are withheld. We are to assume that they are withheld in what seems to the Executive the proper performance of official duty. * * * It is enough that the warrant recites what the law requires. We cannot add to it new conditions. * * * We can see no reason why the warrant of the Executive should be required to go beyond a substantial statement of the existence of the conditions necessary to its issue. It was so held in an early case (*In re Clark*, 9 Wend., 222), and which we think may be wisely followed." In *In re Clark* it was distinctly held that a court or judge "will not inquire as to the probable guilt of the accused" upon the return of a writ of *habeas corpus*. And it was further held that "the only inquiry is whether the warrant on which he is arrested states that the fugitive has been demanded by the Executive of the State from which he is alleged to have fled, and that a copy of the indictment, or an affidavit charging him with having committed treason, felony or other crime, certified by the Executive demanding him as authentic, have been presented." In the warrant issued by the Executive in the case in hand, it was said that the Governor of Pennsylvania represented that the defendant "stands charged with the crime of removing his property to prevent the same from being levied upon by execution, which he certifies to be crime under the laws of said State, committed in the county of Potter, in said State, and that he has fled from justice in said State and has taken refuge in the State of New York, and that said Governor of the State of Pennsylvania, pursuant to the Constitution and laws of the United States, demanded of me (the Governor of the State of New York) that I shall cause the said Le Grange E. Scrofford to be arrested and delivered to William Dannells, who is duly authorized to receive him into his custody and convey him back to the said State of Pennsylvania." The rendition warrant further stated that, "whereas, the said representation and demand is accompanied by the papers required by the statute of the United States to justify a surrender of, and whereby the said Le Grange E. Scrofford is shown to have been duly charged with the said crime, and with having fled from said State and taken refuge in the State of New York, which are duly certified by the

said Governor of the State of Pennsylvania to be authentic and duly authenticated."

We think this last statement is more than a conclusion of law. It is a plain and clear statement of facts, first, that the representation made by the Governor of Pennsylvania "is accompanied by the papers required by the statute of the United States to justify the surrender of," and that the papers show that the defendant has "been duly charged with said crime, and with having fled from said State and taken refuge in the State of New York." It also contains the plain and clear statement that the papers "are duly certified by the said Governor of the State of Pennsylvania to be authentic and duly authenticated." By section 2 of article 4 of the Constitution of the United States it was made the duty of the Governor, on demand of the executive of Pennsylvania, to deliver up the defendant as "a person charged" with crime, to the end that he might be dealt with for the crime, and, for the purpose, "be removed to the State having jurisdiction of the crime." The performance of the duty imposed by the provisions of the Constitution of the United States, to which we have referred, was further enforced by the provisions of the act of congress passed in 1793, the essential parts of which act are found in section 5278 of the Revised Statutes of the United States, page 1027. In speaking of the case in which the Governor acts under the provisions of the Constitution, and the statute to which reference has been made in *Taylor* v. *Taintor* (16 Wall., 370), the court said, viz.: "In such cases the Governor acts in his official character, and represents the sovereignty of the State in giving efficacy to the Constitution of the United States and the law of congress." We see nothing in the papers before us to indicate that the duty imposed upon the Governor was not properly performed, and we are of the opinion that the rendition warrant was valid. The performance of the duty of rendition is further imposed upon the Governor by section 827 of the Code of Criminal Procedure. That section contains a provision to the effect that a person arrested under a warrant of rendition may have a writ of *habeas corpus*, if he claims not to be the particular person mentioned in said requisition, indictment, affidavit or warrant annexed thereto, or to the warrant issued by the Governor thereon. And it is further provided "that, if after a summary hearing, as speedily as may be consistent

with justice, the prisoner or prisoners shall be found to be the person or persons indicted or informed against, and mentioned in the requisition, the accompanying papers and the warrant issued by the Governor thereon, then the court or judge shall order and direct the officer intrusted with the execution of the said warrant of the Governor to deliver the prisoner or prisoners into the custody of the agent or agents designated in the requisition and the warrant issued thereon, as the agent or agents upon the part of such State to receive him or them; otherwise to be discharged from custody by the court or judge." The section also contains another very important provision in the following language: " If, upon such hearing, the warrant of the Governor shall appear to be defective or improperly executed, it shall be by the court or judge returned to the Governor, together with a statement of the defect or defects, for the purpose of being corrected and returned to the court or judge, and such hearing shall be adjourned a sufficient time for the purpose, and in such interval the prisoner or prisoners shall be held in custody until such hearing be finally disposed of." It would seem by this provision that if the special county judge had been of the opinion that the warrant of the Executive was defective, he should have complied with this provision which required him to return the same to the Governor with a statement of the defect or defects " for the purpose of being corrected and returned to the court or judge ; " instead thereof he seems to have been of the opinion that upon discovering any defect in the warrant it was his duty to discharge the defendant. However, as the learned special county judge has held that the recitals in the warrant were insufficient and, apparently, to a large extent based his final action upon such conclusion, we are called upon to meet the question, which we do by holding that the recitals are sufficient in law. In *McCorkle* v. *Herrman* (5 N. Y. Supp., 881) the question whether certain allegations were those of law or of fact was under consideration and the court observed : " So, in the case at bar, where the allegation is that due proceedings were taken by which these liens were filed, the pleader has complied with the rule of alleging conclusions of fact, and not alleging the evidence from which such conclusions must be drawn." We think the recitals in the warrant should have been taken, *prima facie*, true and sufficient. (*People* v. *Pinkerton*, 77 N. Y., 245.)

We sée no force in the suggestion made that there was a misnomer. The defendant claimed on the hearing that he spelled his name with an "a" and that in the Governor's warrant "o" was substituted in place thereof. Upon an inspection of the warrant, which was in writing, so far as the name was concerned, it was not entirely clear that the name was written "Scrof" instead of "Scraf," besides, the witness Douglas, who was called by the defendant, and who was his brother-in-law, in the course of his testimony was shown the signature of the defendant written by him, and the witness added "It looks as if it was spelled with an 'o' there." It may be observed that with the spelling either way the pronunciation may be such that the sound would be the same whether an 'o' or an 'a' was used. In *People* v. *Pinkerton* (17 Hun, 203) there was a conflict in the evidence as to the real name of the defendant. In disposing of that question, GILBERT, J., said : "But taking the whole evidence, we think it was correctly determined that he is the person intended, whatever his real Christian name may be." That case was approved by the Court of Appeals in 77 New York, 245, and the opinion of GILBERT, J., approved. Besides, if the special county judge had supposed there was any force in the criticism as to the spelling of the defendant's name, it would have been more seemly if, in accordance with the provisions of section 827 of the Code of Criminal Procedure, he had returned the same to the Governor to the end that the clerical correction, if needed, might be made. By all that appeared before the judge it was quite apparent that the defendant was the person intended, and that if there was any mistake in the orthography as to his name he was not prejudiced thereby. We think the circumstances relating to the spelling of his name, as they appeared before the judge, furnished no sufficient ground for the discharge of the defendant. These views lead to the conclusion that the order should be reversed.

MARTIN, J., concurred ; MERWIN, J., not voting.

Motion to dismiss the appeal denied ; order reversed.