## Edward Oehler et al. v. Charles Levy.

### Gen. No. 13,520.

1. INJUNCTION—*what essential to valid form of.* An injunction should be as definite, clear and precise in terms as is possible, in order that there may be no excuse or reason for misunderstanding or disobeying it.

2. INJUNCTION—*when lies to restrain nuisance.* Equity will interfere to restrain the continuance of a nuisance before a jury has found that a nuisance exists where the evidence clearly discloses both the nuisance and the injury and the continuity thereof.

3. INJUNCTION—*when does not lie to restrain maintenance of obstruction in public street.* Held, under the evidence in this case, that an injunction should not be granted at the suit of an individ-

Oehler v. Levy.

ual property owner showing no special damage in excess of that sustained by the public at large and showing no physical disturbance of his property rights, to restrain the obstruction of a public street.

4. NUISANCE—*what constitutes*. A stable may become a legal nuisance which should be enjoined, where so conducted that the odors are likely to result in injury to the health of persons occupying adjoining property and where the noise accompanying its conduct is such as to disturb the peace, comfort and sleep of those living in the neighborhood, even when the stable may have been the first building in time of construction and operation. Priority in location is not always controlling.

Bill in chancery. Appeal from the Superior Court of Cook County; the Hon. WILLARD M. MCEWEN, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed December 23, 1907.

SAMUEL B. KING and JULE F. BROWER, for appellants.

ZACH HOFHEIMER and T. H. CLIFFORD, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is by the appellants from a decree of the Superior Court on a bill in chancery brought by them against the appellee as defendant.

The material parts of the decree furnish in themselves a sufficient statement of the facts. The dispute is much less about them than about the proper application of the law to them.

The decree of the court finds that the equities of the cause are with the complainants (the appellants here) "as hereafter set out." The subsequent findings of fact are these:

The complainants at the time of the filing of the bill of complaint in the cause were the owners and in possession of lots ninety-one to ninety-four of Potter Palmer's resubdivision of block eleven and that part of block twelve lying south of Polk street of Codeweiss' subdivision in the west half of the southeast quarter of section eighteen, township thirty-nine north, range fourteen east of the third principal meridian, in Cook county, Illinois, improved with a three-

story brick flat building containing ten flats designed for use and in fact used as living apartments. The complainant, Edward Oehler, then resided in one of said flats as his home. The defendant was at the time of the filing of the bill of complaint the owner of lots ninety-five and ninety-six in the same subdivision, which at the time of the filing of the bill of complaint were improved with a story and a half structure divided into a basement and an upper room, the floor of which is five feet or thereabouts above the level of Lincoln street, in Chicago, on which all of said property fronts and abuts. This property was used by the defendant at the time of the filing of the bill of complaint, and for a long time prior thereto, as a stable, wherein the defendant during said time kept twenty horses or thereabouts and several wagons, which horses and wagons were used by the defendant for the purpose of delivering newspapers, and were harnessed and unharnessed upon and about said premises.

At the time of the filing of the bill of complaint, and for more than a year prior thereto, the defendant had suffered and permitted to accumulate on the premises so occupied by the defendant large quantities of manure, which emitted noxious and offensive odors to such an extent that such odors entered the flat building owned by the complainants as aforesaid, and permeated and rendered offensive the atmosphere in said building. The defendant in the conduct of his business caused to be harnessed and unharnessed a large number of horses during the middle hours of the night, which are usually given to sleeping. The servants of the defendant employed on said premises in harnessing and unharnessing and at different hours of the day used a great deal of loud, profane and obscene language, which was loud enough to be heard by the occupants of the building owned by complainants as aforesaid. The noise accompanying such harnessing and unharnessing and low language was such that it was customarily heard by occupants of the north rooms of the building owned by complainants aforesaid, so as to disturb their sleep. By reason of such odors and language

Oehler v. Levy.

and loud talking the stable conducted by defendant as aforesaid in the aforesaid manner in which it was conducted, constituted a nuisance, at the time of the filing of the bill of complaint. The rental value of the premises of complainants is materially less by reason of the maintenance of said stable.

The premises and the building occupied by the defendant as aforesaid were occupied for the purposes of a stable in which horses were kept at and prior to the time when the building owned by complainants was erected.

Applying the law to the facts thus found, the decree proceeds:

"Because of the fact that the premises occupied by the defendant as aforesaid were used for stable purposes at and before the time the building owned by complainants was erected and before the property upon which it was erected was used for dwelling purposes, the court finds that the complainants are not entitled to restrain the defendant from maintaining a stable for the purpose of keeping horses upon the premises occupied by the defendant, but are entitled to have the stable kept in the best and most sanitary manner possible, and the court doth find that the complainants are entitled to have an injunction restraining the defendant from permitting manure to accumulate upon said premises and said manure must be continually removed, at least once a week, and no manure kept without the building of the defendant, and to restrain the defendant from permitting obscene or profane language to be used upon said premises, and to restrain talking or shouting so loud that such talking will unnecessarily disturb the occupants of the building owned by the complainants as aforesaid."

The ordering part of the decree is as follows:

"It is therefore ordered, adjudged and decreed, that the defendant, his servants and agents, be and they are hereby perpetually enjoined and restrained from permitting to accumulate upon the property of the defendant, being lots 95 to 96," etc. (describing the premises as above), "manure, and shall continually remove the same as aforesaid,—and from conducting a stable upon the said premises of the

defendant in any manner that will create unsanitary conditions in the property of complainants above described beyond what is absolutely necessary, and the defendants and his servants and agents are perpetually enjoined and restrained from using or permitting to be used upon said property of the defendant profane or obscene language or talking or shouting so loud as to disturb the peace and quiet of the occupants or any occupant of the building so owned by the complainants as aforesaid." The defendant is then ordered to pay the costs of the proceedings.

The complainants—appellants—have assigned these errors in this decree:

First. That it was error to find and decree that because the premises occupied by defendant were used for stable purposes before complainants' building was built or the property on which it stands was used for dwelling purposes, complainants are not entitled to have defendant restrained from maintaining a stable for the purpose of keeing horses upon said premises occupied by defendant.

Second. That it was error not to enjoin and restrain the defendant from maintaining or permitting upon his property a stable for horses in such a way as to produce noise sufficient to disturb the sleep or comfort of the dwellers in the building owned by complainants, or so as to produce odors or gases deleterious to the health or comfort of the dwellers in complainants' building.

Third. That it was error not to enjoin perpetually the defendant from maintaining a stable on property adjoining complainants' building.

Fourth. That it was error not to enjoin the defendant from maintaining between his stable and the curb of the street in front thereof an obstruction to the sidewalk consisting of a driveway, the surface of which is elevated above the level of the sidewalk to a height above said level of eight inches to one and one-half feet.

The defendant—the appellee—has assigned these cross-errors:

First, second and fourth. The court erred in entering any

Oehler v. Levy.

decree in favor of appellants and against appellee, and not dismissing the bill for want of equity.

Third. The court erred in decreeing costs against the appellee.

Fifth. The court erred in finding that by reason of odors and language and loud talking the stable conducted by appellee in the manner it was conducted at the time of the filing of the bill, constituted a nuisance.

Sixth. The court erred in enjoining appellee from permitting manure to accumulate upon his property and from conducting a stable upon his premises in any manner that will create unsanitary conditions in appellants' property beyond what is absolutely necessary, and from using or permitting to be used upon his property profane or obscene language or talking or shouting so loud as to disturb the peace and quiet of the occupants of the appellants' building.

Seventh. The decree is too uncertain and indefinite.

We think that the seventh cross-error is well assigned, and that the decree would have to be reversed on it alone, were there no other reason for it. To provide that the defendant and his servants and agents shall be enjoined from talking or shouting on their own premises so loud as to disturb the peace and quiet of any occupant of the complainants' adjoining building is in itself to make an injunction exceedingly provocative of further dispute; to couple that with a prohibition of the defendant's conducting a stable upon his premises in any manner that will create unsanitary conditions in the complainants' building *beyond what is absolutely necessary,* is to lay the foundation for inevitable future litigation, in which the issues will be likely to be tried on unsatisfactory *ex parte* affidavit testimony, in contempt proceedings.

Thus in this private dispute, that extraordinary power of the court will be invoked which Judge Breese well said, in Stuart v. People, 3 Scammon, 392, more than half a century ago, is "not a jewel of the court to be admired and prized, but a rod rather, most potent when rarely used." Such a result ought not to be the effect of an injunction.

An injunction should be as definite, clear and precise in terms as is possible, in order that there may be no excuse or reason for misunderstanding or disobeying it.

It must be admitted, however, that there was and is a serious difficulty in the present case in so framing a decree as to do justice between the parties and at the same time to secure this precision and definiteness which should be characteristic of an injunction. We have felt this difficulty, and without doubt the trial court felt it in the same manner.

After a full consideration of the evidence, we think the findings of the court purporting to embody the facts fully sustained.

We think it is proven that the accumulated manure on the defendant's premises emitted not only offensive but "noxious" odors affecting the atmosphere in the complainants' building. We do not, nor did the court below we think, use the term noxious as synonymous merely with "noisome," but in its primary and etymological signification of injurious to health. We think it also proven that the noise accompanying the transaction of the defendant's business in this stable, as he conducted it, and necessarily accompanying indeed the mere keeping of so many horses as he did keep there, habitually disturbed the comfort and sleep of the occupants of complainants' building; that the two things combined, and each of them separately indeed, constituted a nuisance, and that by reason of them the rental value of the complainants' premises was materially reduced.

This, in our opinion, furnished a sufficient ground for the interference of a court of equity by injunction to abate the continuing nuisance.

Much has been said in the arguments of counsel as to whether or not equity will interfere by injunction until a jury at law has found the nuisance to exist, and many authorities cited and distinguished. But on this point the Supreme Court of Illinois has stated the law of Illinois with precision. In Nelson v. Milligan, 151 Ill., 462, p. 466, the court said: "All the authorities agree that the restraining power of courts of equity by injunction may be invoked

Oehler v. Levy.

by a private individual to prevent a special injury by the erection or continuance of a nuisance. But it is equally well settled that the jurisdiction is always reluctantly exercised until the nuisance has been found to exist by a jury, and never *unless both the nuisance and the resulting injury are clearly shown by the evidence."* To these propositions many authorities are cited by the court. Minke v. Hopeman, 87 Ill., 450, lays down the same rule.

In this case, as we have indicated, we think the condition is fulfilled, and that both the nuisance and the injury and their continuity as well are proved by the evidence.

Our view that the law of Illinois has been definitely declared on this subject by the Supreme Court of Illinois, renders unnecessary a discussion of the cases in other jurisdictions and an attempt to distinguish and discriminate between them. There are many in point, and the whole subject, with copious citations, is discussed in the third division of chapter 13 of High on Injunctions.

It is urged, however, that even if a court of equity would have the right and duty to interfere by injunction in a case where the nuisance came to the dwelling, no such right or duty exist where the dwelling came to the nuisance.

This consideration is undoubtedly of great force in cases like the present, where the nuisance arises from the exercise of a perfectly legitimate calling, which was no nuisance to anybody before the dwelling, whose occupants complain, was built.

The language of Judge Agnew in the Supreme Court of Pennsylvania, in a case where the nuisance came to the dwelling—"A court exercising the power of a chancellor, whose arm may fall with crushing force upon the every day business of men, destroying lawful means of support and diverting property from legitimate uses, cannot approach such cases as this with too much caution. Its aid is not of right, but of grace, and it must be sure that the exercise of this kingly power is just, wise and proper before it takes from a citizen his means of livelihood and destroys the value of his property for legitimate uses" (Huckenstine's Appeal,

70 Pa. St., 102), is even more forceful as reminding a
court of its responsibility, when applied to a case like the
present, where the defendant was engaged in a lawful busi-
ness on his lot before the complainant so improved his lot
as to make himself a person to whom that lawful business
of his neighbor was a nuisance.

The appellants indeed claim that in the present case the
appellants did not come to the nuisance, and call the defend-
ant's claim to the contrary a "subterfuge." It is true that
the appellee himself did not come into occupancy of the
stable property until after the appellants had purchased
their flat building, and that changes were made by him in
the arrangement of the building and in the place and method
of stabling horses after his first entrance into his lease.
It is true also that for some time before he went into pos-
session of the premises for the purpose of stabling his horses
used in the newspaper carrying business, a part of them had
been used for purposes other than those of a stable and
the number of horses kept there had apparently been small;
but the building was built for a stable for persons engaged
in the teaming business, and was occupied by as large a
number of horses at least when the complainants' building
was erected as when the bill in this case was filed. We
think, therefore, that the court below was substantially right
in treating the matter in its decree as one between a dwelling
house owner and a stable owner who was in possession
before the dwelling house was built. Levy was first a
lessee, who stood practically in the shoes of the man who
had built the place. He occupied it for substantially the
same purpose, which was the very apparent purpose of its
construction. Then he bought it before this bill was filed.

But when the nuisance is clearly proven to exist, as we
think in this case it is, is the priority of occupation a con-
trolling or, in the strict sense, a material circumstance?

Undoubtedly, to judge from the authorities, it was for-
merly often, although not always, so considered. (Bisp-
ham's Principles of Equity, section 442.) The question in-
volved is an interesting and delicate one. Should pioneers

in any direction on the outskirts of a growing city or in its purely manufacturing and business quarters, be entitled to hold in its place, against the changing conditions of the neighborhood, a business legitimate in itself, but injurious and hurtful to residences and their occupants? This question seems to be answered for Illinois, so far as a judicial dictum can answer it, by the language of Judge Magruder, speaking for the Supreme Court in Laflin & Rand Powder Co. v. Tearney, 131 Ill., 322, in the following words: "Carrying on an offensive trade for any number of years in a place remote from buildings and public roads does not entitle the owner to continue it in the same place after houses have been built and roads have been laid .out in the neighborhood, to the occupants of which and the travellers upon which it is a nuisance. As the city extends, such nuisances should be removed to the vacant ground beyond the immediate neighborhood of the residence of the citizens. This, public policy as well as the health and comfort of the population of the city demand." This seems also to be the doctrine laid down in other jurisdictions in such cases as Campbell v. Seaman, 63 N. Y., 558; Van Fossen v. Clark, 113 Iowa, 86; Susquehanna Fertilizer Co. v. Malone, 73 Maryland, 268; King v. Morris & Essex Railroad Company, 18 N. J. Eq., 397, and many others, which cases are the probable justification for the assertions of text writers that "the doctrine of coming to a nuisance is now exploded," and that the most recent authorities hold that the fact that complainant came to such a nuisance is immaterial and will not prevent the issuance of an injunction. Bispham's Principles of Equity, section 442; Joyce on Nuisances, section 49.

It may easily be conceived that the rights of the parties carrying on a legitimate business, which would be nevertheless a nuisance in a residence district, and of persons who wished to establish a residence in some particular locality, might under some circumstances be very different from the ones in the mind of writers who conceive of the residence use of property as always the higher use. Legally

we take it, for the purposes of a discussion like this, the higher use must always be considered that which is economically the more profitable. The principle which would allow an injunction in favor of one who came with a residence to a nuisance of such a character in a locality where that highest and most profitable use of the land was for residences, would not justify such an injunction in favor of a person who undertook to build a residence and demand such an injunction in a locality where the highest and most profitable economic use for the land in that vicinity was for trades and callings which could not be made inoffensive or even harmless to resident householders. We are laying down, therefore, no universal rule that an injunction will always issue in favor of a householder either prior or subsequent in such holding to a neighbor in an offensive business.

To a certain extent the change in values of certain pieces of land works automatically the change in the characteristics of the neighborhood, but cases, such as the one at bar seems to present to us, occur where the changes in a populous city make it clear, as the court in the Tearney case (*supra*) indicates, that public policy and individual health and comfort demand that the courts should so enforce the old maxim "*Sic utere tuo ut alienum non laedas*" as to require the removal of a business *per se* entirely legitimate from a neighborhood where it had been in entire good faith and legally established; and this notwithstanding the forceful warning of Judge Agnew in Huckenstine's Appeal (*supra*), which we have before quoted.

In the present case it seems evident from the record that the neighborhood of the contending parties has become and is becoming more completely a thickly settled residence locality, especially used for apartment houses and small flats, often occupied by physicians and dentists and medical and dental students, attracted by the hospitals in the vicinity.

That the keeping of such a stable and transacting such a business as the defendant transacts must be noxious and offensive and a nuisance to such adjoining residences, reducing

Oehler v. Levy.

the value of the property, seems in this record to be proven not only by the complainants, but by the defendant's witnesses; for example, the witness Jones (Rec. 225) and the witness Biggis (Rec. 233).

The deduction made by the appellants from this situation is, as shown in their assignment of errors, that defendant should be perpetually restrained from maintaining any stable on the premises occupied by him.

To this extent we are not prepared to go, although we find it very difficult to determine where the exact line between the permissible and the prohibited should be drawn. This is undoubtedly the difficulty which the court below felt, and which the decree fails, as we think, satisfactorily to solve because of its vagueness and indefiniteness, and because, as we are convinced, it does not go so far as the law and justice require.

Although the injunction which we feel ourselves compelled to order may practically amount to a prohibition of the defendant's continuing his business at his present stand, by enforcing conditions impossible of fulfilment in the conduct of that business, yet theoretically at least it must stop short of forbidding a stable altogether, for it is possible that a man might have a stable on said property and keep but one or two horses for business or pleasure, and although his neighbor might wish it away, he would have no ground to claim it to be a nuisance which should be abated. We do not desire to establish a precedent for neighborhood quarrels and capricious complaints to the court on slight causes.

As the Supreme Court of New York said in Filson v. Crawford, 5 New York Supplement, 882, "While a stable like a tenement house or factory, may be objectionable and seriously injure the value of other property, many stables are undoubtedly kept in large cities in such a manner that they cannot be regarded in law as nuisances."

The injunction, as that eminent Master of the Rolls, Sir George Jessel, pointed out in a similar case—Broder v. Saillard, The Law Reports, 2 Chancery Division, 692—should be directed against the defendant's occasioning by his stable

any nuisance to the complainants or the occupants of their house. This was undoubtedly the purpose of the chancellor in this case, but, as we have said, we do not think the injunction went far enough or was precise enough.

We shall therefore reverse the decree and remand the cause to the Superior Court, with directions to enter a decree perpetually enjoining the defendant from maintaining or permitting to be maintained on the property of the defendant described as lots 95 and 96 in Potter Palmer's resubdivision of block eleven and that part of block twelve lying south of Polk street of Codweiss's subdivision in the west half of the south quarter of section eighteen, township thirty-nine, north range fourteen east of the third principal meridian, in Cook County, Illinois, a stable for horses in such numbers or in such a manner as to produce noise sufficient habitually to disturb the sleep or comfort of the dwellers in the building owned by complainants on lots 91 to 94 in said resubdivision, or as to produce odors or gases deleterious to the health or comfort of the dwellers in said building, or so to conduct business on said premises as to cause by the noise and loud talking incident thereto habitual disturbance to the health, sleep or comfort of said dwellers.

It is urged by appellants that the injunction just granted in favor of complainants ought to include a prohibition of the maintenance by the defendant of the inclined driveway from the stable to the street, obstructing the sidewalk. This driveway is without doubt a public nuisance such as the Branch Appellate Court of this District in Chicago Cold Storage Warehouse Co. v. The People, 127 Ill. App., 179, and the Supreme Court in the same case, 224 Ill., 287, said should be abated at the suit of the People, even though the city council had undertaken to authorize it.

Appellants claim that they are directly and injuriously affected, and indeed specially and peculiarly injured beyond the general public by the obstruction on account of the proximity of their building to it, and cite such cases as Green v. Oakes, 17 Ill., 249; Craig v. People, 47 Ill., 487; Snell v. Buresch, 123 Ill., 151, and the late case of Nelson v. Ran-

dolph, 222 Ill., 531, to sustain the contention. In the last case the court seems to cite the former cases to the point that an obstruction of the public highway at the suit of an individual who is directly and injuriously affected, may be enjoined without the showing of a special and peculiar injury which is not common to all the public; but proceeds to decide the case on the ground that such a special and peculiar injury had been averred.

But there are cases which seem to hold that to give any individual an action against the maker of an obstruction in a public street, there must be a direct physical disturbance of a right enjoyed by the complainant in connection with his property, and a special damage with respect to his property in excess of that sustained by the public generally.

The principles enunciated in these cases make it seem doubtful to us whether an injunction in favor of complainants in this case against this obstruction would be proper. The appellants should take other means to secure its removal if they desire it. They have made no specific prayer for relief against it in their bill; they allowed it as an obstruction, before it was changed from wood to cement, to remain uncomplained of for five years after they bought their property. We do not think we should include an injunction against it in our directions.

The decree is reversed and the cause remanded with directions hereinbefore indicated.

*Reversed and remanded with directions.*