2023 IL App (1st) 211580

Nos. 1-21-1580, 1-22-0282 & 1-22-1148 (cons.)

Filed May 25, 2023

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RAY PARDILLA and BELEN PARDILLA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 50232 |
| | ) | |
| THE VILLAGE OF HOFFMAN ESTATES, | ) | Honorable |
| | ) | John J. Curry, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     The Village of Hoffman Estates (Village) needed to rebuild a sanitary lift station. Construction plans called for temporarily staging equipment and materials on a strip of land belonging to the adjoining property owners, Ray and Belen Pardilla (collectively, the Pardillas). The Village began construction, using the strip of the Pardillas' property, despite the Pardillas refusal to grant the Village a temporary construction easement and without obtaining such an easement through eminent domain proceedings. The Pardillas sued the Village for inverse condemnation and other claims. They also obtained a preliminary injunction requiring the Village to remove fencing and materials from the Pardillas' land. The injunction further prohibited the

Village from interfering with the Pardillas' property rights but permitted the Village to use its right of entry, as provided in the subdivision's plat dedication.

¶ 2    The Village removed the fencing and materials, but the Pardillas claimed the Village continued to perform construction work on their property in violation of the injunction. The Pardillas then initiated contempt proceedings, and the trial court issued a rule to show cause. After a later hearing, the trial court found the Village in indirect civil contempt and ordered that the Village would be fined $1000 per day for any future violations of the injunction. The court later awarded the Pardillas attorney fees incurred in bringing the contempt petition.

¶ 3    In consolidated appeals, the Village appeals from (1) the preliminary injunction, (2) the finding of contempt, and (3) the attorney fees award. For the reasons that follow, we vacate the finding of contempt and vacate the corresponding award of attorney fees.[1]

¶ 4                                I. BACKGROUND

¶ 5                              A. Factual Background

¶ 6    The Village maintains a sanitary lift station—part of the Village's wastewater system—on a small lot situated near the southeast corner of Golf Road and Woodcreek Lane in Hoffman Estates, identified as "Outlot A" on a subdivision plat.[2] In 2018, the Village discovered groundwater seepage in the lift station that, if left unchecked, could cause the pumps to fail. After lesser measures proved inadequate, the Village determined that the lift station needed to be replaced.

¶ 7    The Pardillas' single family home is situated on a lot just south of Outlot A. The Village's construction plans contemplated using a strip of land along the northern boundary of the Pardillas'

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.
[2]A lift station pumps wastewater to a higher elevation where such water could not flow from the source to its destination by gravity alone.

lot during the construction. The strip would extend approximately 20 feet from Outlot A onto the Pardillas' property and run the length between the Pardillas' west and east property lines, approximately 106 feet. No permanent structures or facilities would be constructed on the Pardillas' property. Rather, the Village intended to use the strip temporarily during the construction occurring on Outlot A as a staging area for storing materials and equipment.

¶ 8    Initially, the Village requested that the Pardillas grant it a temporary construction easement, but the parties failed to reach agreeable terms. Later, the Village informed the Pardillas that it would proceed with the project as planned without their approval, claiming that it had an easement to use the Pardillas' property for this purpose. Construction work began on April 15, 2021. A six-foot high chain link fence was erected around the entire construction site, including across the Pardillas' property, enclosing the strip within the construction site. Trees and other vegetation situated on the strip were also removed. As the project proceeded, the workers piled excavated earth, placed materials, and parked heavy equipment, such as a bulldozer and an excavator, on the strip.

¶ 9    B. Lawsuit and Preliminary Injunction

¶ 10    The Pardillas filed suit, asserting claims of inverse condemnation, ejectment, and trespass. They also sought a temporary restraining order (TRO) and preliminary injunction. The circuit court denied the request for a TRO but scheduled a hearing to consider a preliminary injunction and ordered expedited discovery. In the hearing, the Village asserted that it possessed easements over the Pardillas' property, which permitted it to use the strip in accordance with its construction plans.[3] Specifically, the Village pointed to a utility easement running north-south along the rear of the Pardillas' property, a gas easement along the front, and a "blanket easement," encumbering

---

[3]"An easement is an individual's right or privilege, for a limited purpose, to either pass over or use the land of another." *Katsoyannis v. Findlay*, 2016 IL App (1st) 150036, ¶ 28.

every property in the subdivision, including the Pardillas'.[4] The blanket easement derived from

language included on the subdivision plat dedication that reads in relevant part as follows:

> "An easement is hereby reserved and granted to *** the Village of Hoffman Estates ***
> within the areas shown by dashed lines and within the area defined 'Easements for Public
> Utilities' on this plat, to install, lay, construct, renew, operate and maintain conduits, cables
> and wires, storm and sanitary sewer and water mains and drainage swales, above and
> underground, with all necessary manholes, water valves and other equipment for the
> purpose of serving the subdivision and other property with telephone, electric, sewer and
> water service, and drainage purposes, the right to enter upon the lots at all times to install,
> lay, construct, renew, operate and maintain within said easement areas said conduits,
> cables, wires, manholes, water valves and other equipment."

¶ 11     Following the hearing, the court granted the preliminary injunction on November 9, 2021.
In an oral ruling, the court found that most of the strip the Village was using for the lift station was
not "within the areas shown by dashed lines" or "within the area defined 'Easements for Public
Utilities' " on the plat. The court interpreted the blanket easement to merely grant the Village a
limited right of entry to traverse the Pardillas' property to access the utility easements to "install,
lay, construct, renew, operate and maintain" equipment within those easements. Moreover, the
court found that the Village's use of the Pardillas' property as a construction staging area exceeded
its right of entry. Overall, the court found that the Pardillas had made the requisite showing for a
preliminary injunction.

---

[4]A blanket easement is formed when the instrument creating the easement does not delineate specific dimensions of the easement for ingress and egress. *1400 Museum Park Condominium Ass'n v. Kenny Construction Co.*, 2021 IL App (1st) 192167, ¶ 50 n.5.

¶ 12          In a written order, the court ordered the Village to "vacate and depart" from the Pardillas' property and remove the chain link fence within seven days. The order also provided that the Village "may not interfere or prohibit" the Pardillas' use of their property "in the area complained of in the complaint." However, the order did not prohibit the Village from "appropriate exercise of easement rights" under the subdivision plat, the blanket easement. On November 19, 2021, the court entered an amended order with the same provisions but added that the preliminary injunction would remain effective and expire only upon entry of a final order in the case. The Village filed a notice of appeal from the November 9 and 19 orders on December 8, 2021.

¶ 13                              C. Petition for Rule to Show Cause

¶ 14          On December 3, the Pardillas filed a petition for rule to show cause. The petition alleged that the Village was continuing to use a portion of their property for construction activity in violation of the preliminary injunction, specifically by piling soil and gravel and parking vehicles. Photographs were attached to the petition as exhibits. The petition requested that the court order the Village to appear and show cause why it should not be held in contempt for violating the preliminary injunction "and punished accordingly."

¶ 15          The parties appeared on December 8. The Pardillas' attorney indicated he was prepared to call Ray Pardilla to testify and that they intended to present additional photographs. The court directed the Pardillas' attorney to proceed by way of argument instead of presenting evidence through testimony. While referencing photographs, counsel stated that the Village removed the chain link fence initially after the preliminary injunction was issued but later erected a fence on the eastern part of the strip. In addition, counsel stated that the Village was "driving backhoes, Bobcats, [and] flatbed trucks, [and] unloading materials, all entirely within the area that had been previously occupied and fenced in." Further, counsel described photographs which he explained

as depicting construction workers spray painting lines and placing flags to mark a planned driveway. Counsel also presented photographs that he described as showing workers conducting meetings on the Pardillas' property. Lastly, counsel presented photographs that he asserted showed use of a backhoe and dump truck to pile soil and gravel on the Pardillas' property in early December.

¶ 16 After hearing from the Pardillas' counsel, the court asked the Village's attorney whether the Village had any procedural objections or whether the Pardillas' petition had any "inherent defects." The Village insisted that it acted within its easement rights and had not violated the preliminary injunction. The court found that the Village's response went to the merits of the alleged contempt and did not address defects in the petition.

¶ 17 The court then found that the Pardillas' "offer of proof" showed that the Village was conducting activity prohibited by the preliminary injunction. While noting that it had permitted the Village to exercise its right of entry, the court remarked that such right only allowed "slight traversing of the property by a human being." In a written order, the court issued a rule to show cause, stating that the Village was ordered to appear and show cause why it should not be held in civil contempt for its failure—"per [the] Court's finding of [a] *prima facie* case"—to obey the injunction entered on November 19, 2021.

¶ 18 D. Contempt Hearing

¶ 19 After a continuance, the hearing on the rule to show cause took place on January 14, 2022. At the outset, the court stated:

"[W]e're here today on the continued petition for rule to show cause. I have previously found that the plaintiffs had made a *prima facie* case of contempt, and therefore, I issued a rule for the defendant to show cause as to why they should not be held in civil contempt."

¶ 20      The Village moved to strike the hearing for several reasons, including that the burden of proof remained with the Pardillas and that an "offer of proof" was insufficient for a *prima facie* showing of contempt. The Village also argued that the alleged contempt could only be criminal, not civil, since the acts occurred in the past, the court could not fashion a coercive sanction, and the Village could not do anything to purge the contempt.

¶ 21      The court found that the Village's motion to strike the hearing was untimely since it failed to raise these issues, which the court described as "hyper-technical objections," before the court issued the rule to show cause on December 8. In addition, the court explained that a civil contempt proceeding was appropriate where the court could impose "prospective sanctions" for repeat violations of an order when a past violation is shown. The court believed this case posed that situation since the Village's future conduct was unpredictable and the lift station project was a "dynamic situation."

¶ 22      In the hearing, Ray Pardilla testified that the Village removed the fencing after the preliminary injunction was issued but quickly resumed construction activity on his property. He described instances in which vehicles drove across his property, including trucks, a Bobcat,[5] and a cement truck. Pardilla authenticated various photographs taken between late November and December 16, 2021, depicting this activity. The Village's Director of Public Works, Joseph Nebel, testified that the Village removed all fencing, equipment, and materials from the strip within two days after the preliminary injunction was issued and had conducted no construction activity there since. Some of the activity depicted in Ray Pardilla's photographs, according to Nebel, was related to a sewer main that feeds into the lift station and the work took place wholly within the utility easement running along the rear of the Pardillas' property. Nebel admitted, however, that vehicles

---

[5]Bobcat is the company and trade name of a maker of compact-sized construction vehicles.

drove across the Pardillas' property and some activity, such as delivery of materials and pouring concrete from a cement truck, took place in areas outside the utility easement. Nebel believed such usage was permitted pursuant to the Village's right of entry under its blanket easement.

¶ 23 After accepting testimony, exhibits, and argument, the court entered a written order finding the Village in indirect civil contempt on January 19, 2022. The order stated:

"The Village of Hoffman Estates failed to comply with and obey [the preliminary injunction] by acting in the following manner on numerous occasions after November 9, 2021 through December 16, 2021 on Plaintiffs' real property: placing and stockpiling building materials and other items, conducting construction-related work including construction personnel using and placing mechanized construction vehicles and equipment, and traveling over the property with vehicles. The evidence shows that the actions and activity, while now suspended largely due to winter weather, are likely to be resumed."

The order required the Village to "strictly adhere" to the preliminary injunction. It also ordered that the Village notify the Pardillas' counsel in advance if the Village were to enter the Pardillas' property due to an emergency or necessity. The court further ordered that the Village would be subject to a fine of $1000 per day for each day any further activity occurs in violation of the preliminary injunction. The Village filed a second notice of appeal on February 1, 2022, citing the January 19 contempt finding.

¶ 24 Subsequently, the court awarded the Pardillas' attorney fees incurred in connection with the contempt proceedings and entered a judgment of $17,493.10 against the Village on June 29, 2022. The court stayed enforcement of the judgment pending resolution of the Village's appeal of the preliminary injunction. The Village filed a third notice of appeal on July 22, 2022, citing the June 29 order. The three appeals were consolidated.

¶ 25    We ordered the parties to file supplemental briefs addressing the status of the lift station project and what effect, if any, it has on the appeals. Their briefs indicate that the project is nearly complete and, most significant, any remaining work will not require entry onto or use of the Pardillas' property. Both parties insist the initial appeal presents an existing controversy and seek review of the trial court's decision to grant the preliminary injunction.

¶ 26                                    II. ANALYSIS

¶ 27                                   A. Jurisdiction

¶ 28    To begin, we must determine our jurisdiction. This court is obliged to consider its own jurisdiction, even if no party raises the issue, and dismiss the appeal if jurisdiction is lacking. *Cigna v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 190620, ¶ 15. The Village appeals three orders: a preliminary injunction, a finding of contempt for violating the injunction, and an award of attorney fees in connection with the contempt proceedings. By itself, the preliminary injunction is moot. The Village completed what it was ordered to do and no longer seeks to do what the injunction prohibited. See *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶¶ 48-49 (finding an appeal from the denial of a preliminary injunction moot when a ruling would have no practical effect due to intervening events); *Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 124 (1996) (same). Nevertheless, the preliminary injunction may be reviewable since the Village was found in contempt for violating the injunction and it appeals the contempt finding. "The review of a contempt finding necessarily requires review of the order upon which it is based." *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 968 (2004). But complicating matters further, a finding of contempt alone—without a penalty imposed—is not appealable. *Vowell v. Pedersen*, 315 Ill. App. 3d 665, 666 (2000); Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016) (providing for independent appeal of "[a]n order finding a person or entity in contempt

of court which imposes a monetary or other penalty"). That was the situation here when the Village filed its second notice of appeal. Yet, the trial court later entered a judgment against the Village upon awarding the Pardillas attorney fees related to the contempt proceedings. See *Edwards v. Pekin Memorial Hospital*, 2023 IL App (3d) 210005, ¶ 49 ("The court may require a contemptuous party to bear the contempt action's reasonable costs and attorney fees."). We find that the award of attorney fees was a penalty imposed because of the contempt finding, making the contempt order reviewable.[6] And since the preliminary injunction was an order that "ultimately resulted in the finding of contempt" and penalty, it is also reviewable. (Internal quotation marks omitted.) *Bryton Properties, LLC v. Kids' Work Chicago, Inc.*, 2022 IL App (1st) 210441, ¶ 29. Thus, we review all three orders based on the Village's third notice of appeal, filed after the entry of the judgment awarding attorney fees.

¶ 29                                B. Preliminary Injunction

¶ 30          We first consider the preliminary injunction. An injunction is

> " 'a judicial process, by which a party is required to do a particular thing, or to refrain from
> doing a particular thing, according to the exigency of the writ, the most common sort of
> which operate as a restraint upon the party in the exercise of his real or supposed rights.' "
> *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (quoting *Wangelin v. Goe*, 50 Ill. 459, 463
> (1869)).

---

[6]It is unclear whether the contingent fine of $1000 per day constitutes an imposed penalty for purposes of appealability under Rule 304(b)(5). The record indicates that no such fine was ever imposed. *Cf. Pedigo v. Youngblood*, 2015 IL App (4th) 140222, ¶¶ 16-18 (holding that a trial court's finding of contempt that imposed a penalty that contemnor pay reasonable attorney fees was not yet appealable under Rule 304(b)(5) since the fee amount remained to be determined when contemnor filed his notice of appeal). We need not resolve the question here since the court imposed a determinate sum of attorney fees as a sanction before the Village filed its third notice of appeal.

The purpose of a preliminary injunction is to prevent a threatened wrong or a continuing injury pending a trial on the merits of the case. *Limestone Development Corp. v. Village of Lemont*, 284 Ill. App. 3d 848, 853 (1996). It provides relief to an injured party and preserves the status quo until a trial is held. *Continental Cablevision of Cook County, Inc. v. Miller*, 238 Ill. App. 3d 774, 790 (1992).

¶ 31    Injunctions may be prohibitory or mandatory. *Id.* at 789. A prohibitory injunction orders a defendant to refrain from continuing certain actions while a mandatory injunction commands the defendant to perform a positive act. *Id.* A preliminary injunction is an extraordinary remedy, and preliminary mandatory injunctions are disfavored. *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill. App. 3d 207, 230 (2008).

¶ 32    A party seeking a preliminary injunction must demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law exists, and (4) a likelihood of success on the merits of the case. *Somer v. Bloom Township Democratic Organization*, 2020 IL App (1st) 201182, ¶ 16. In considering a preliminary injunction, courts do not determine any disputed questions of fact or decide the case on the merits. *Maday*, 2018 IL App (1st) 180294, ¶ 41.

¶ 33    The preliminary injunction in this case contained both mandatory and prohibitory orders. It required the Village to do certain things and to refrain from others. The Village was ordered to remove the fencing that it had erected and "vacate and depart" from the Pardillas' property within seven days. At the same time, the Village was ordered not to "interfere [with] or prohibit" the Pardillas' use of their property. However, the prohibition did not bar the Village from "appropriate exercise of easement rights."

¶ 34    Among other contentions, the Village argues that the preliminary injunction's order to "not interfere [with] or prohibit" the Pardillas' use of their property while retaining "appropriate exercise of easement rights" is unclear. We agree.

¶ 35    To be valid, an injunction must specify what acts are mandated or prohibited. Section 11-101 of the Code of Civil Procedure provides that: "Every order granting an injunction *** shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." 735 ILCS 5/11-101 (West 2020). Illinois courts have consistently held that "an injunction must be definite, clear, and precise in its terms in order to conform with this statutory requirement." *Patrick Media Group, Inc. v. City of Chicago*, 252 Ill. App. 3d 942, 946 (1993). Precision is required so that there can be no excuse or reason for failing to comprehend or obey the court's directions. *Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d 827, 840 (1988).

> "[T]he terms of an injunction should have sufficient clarity and specificity to allow the parties to ascertain with reasonable certainty what is prohibited or required, and to conform their conduct to the requirements of the injunction, without requiring inferences about what conduct is prohibited or being subject to misunderstanding and confusion." 42 Am. Jur. 2d *Injunctions* § 261 (2023).

"Broad, nonspecific language that merely enjoins a party to obey the law or comply with an agreement does not give the restrained party fair notice of what conduct will risk contempt." *Id.*

¶ 36    The problem of an imprecise injunction was shown in *Oehler v. Levy*, 139 Ill. App. 294, 299 (1907). There, a trial court enjoined a property owner who kept horses from:

> "conducting a stable *** in any manner that will create unsanitary conditions in [his neighbor's] property beyond what is absolutely necessary, and from using or permitting to

be used upon his property profane or obscene language or talking or shouting so loud as to disturb the peace and quiet of the occupants of the [neighbor's] building." *Id.*

This court found that the injunction was "uncertain and indefinite" and laid "the foundation for inevitable future litigation." *Id.*

¶ 37   We find the injunction here to be similarly indefinite and uncertain. The order to not "interfere [with] or prohibit" the Pardillas' use of their property while the Village may appropriately exercise its easement rights is neither definite, clear, nor precise. This order gives little more direction than a general command to obey the law. Interference with or prohibition of a property owner's use of their property does not identify specific acts. Rather, these are broad characterizations or legal conclusions. Likewise, whether a party has properly exercised their easement rights is a legal conclusion, not a specific act. Which specific acts interfere with property rights or constitute proper exercise of easement rights is far from precise as the volumes of case law involving these kind of disputes attests. Like the injunction in *Oehler*, the order laid a foundation for inevitable future disputes. As the subsequent contempt proceedings revealed, the parties had different interpretations of what constituted interference with the Pardillas' property rights or appropriate exercise of the Village's easement rights.

¶ 38   Ultimately, the preliminary injunction failed to specify what the Village could or could not do. In its oral ruling, the trial court stated that the Village had a right of entry to traverse the Pardillas' property to perform work in utility easements as provided in the plat dedication. By implication, the Village could do nothing else. This explanation provides some elaboration on the court's intended directions, but the prohibitory term remains imprecise. Nevertheless, the court's remarks do not constitute terms of an injunction. Section 11-101 requires that specifics be set forth in the written order.

¶ 39    Similarly, we reject the Pardillas' argument that the preliminary injunction was clear since the Village understood from the context of the case that it was enjoined from performing any construction activity on the Pardillas' property and acknowledged as much in statements before the court. The prohibited conduct must be set forth clearly in the order. Since the prohibitory order lacked specificity, we find that this term of the preliminary injunction was unenforceable.

¶ 40    Aside from the unclear prohibitory order, the mandatory orders are moot. The Village complied by removing the fencing and other materials from the Pardillas' property. Nor does the Village seek to reinstall the fence or place materials there again. Since our jurisdiction is premised on the award of attorney fees in connection with the finding of contempt for violating only the prohibitory order, it is prudent that we limit our review to what is necessary to resolve that issue. Our analysis of the prohibitory order accomplished that. So, we need not consider the parties' other contentions regarding the preliminary injunction. The remaining arguments mainly address interpretation of the blanket easement, which goes to the ultimate issues in the case. An appeal from an order granting or denying a preliminary injunction should not be used to determine the merits of a case. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399 (1993).

¶ 41                                C. Contempt Finding

¶ 42    Even if the preliminary injunction were clear, we would vacate the subsequent finding of contempt because the court improperly shifted the burden of proof to the Village without the Pardillas' first meeting their burden to make the requisite evidentiary showing. In civil contempt proceedings, the petitioner has the burden to show, by a preponderance of evidence, that a violation of a court order has occurred. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 507-08 (1993). Importantly, a verified petition for rule to show cause does not satisfy the petitioner's evidentiary burden. *Id.* Also, by issuing a rule to show cause, a court does not make a *prima facie* finding that

the alleged contemnor has violated a court order. *Id.* at 508. Rather, a petition for rule to show cause and the rule to show cause "operate together to inform the alleged contemnor of the allegations against [them]" as well as the time and place of the hearing. *Id.* At the hearing, the burden is on the petitioner to show that the alleged contemnor has violated a court order. *Id.* The burden shifts to the alleged contemnor only after such showing is made. *Id.*

¶ 43 Here, the court found that the Pardillas' made a *prima facie* showing that the Village violated the preliminary injunction based on an "offer of proof" in which the Pardillas' attorney presented photographs and stated that Ray Pardilla would testify that the Village was doing construction work on his property. An offer of proof is not evidence. A party makes an offer of proof when a trial court excludes evidence, the party seeks to preserve the issue for review, and the record is otherwise insufficient to assess its admissibility. *Greater Pleasant Valley Church in Christ v. Pappas*, 2012 IL App (1st) 111853, ¶ 37. The offer of proof " 'disclose[s] the nature of the offered evidence to which objection is interposed, for the information of the trial judge and opposing counsel, and to enable the reviewing court to determine whether the exclusion was erroneous and harmful.' " *Id.* (quoting *Sekerez v. Rush University Medical Center*, 2011 IL App (1st) 090889, ¶ 68).

¶ 44 An offer of proof was not called for when the parties appeared on the petition for rule to show cause since the court had not excluded any evidence. Rather, the court essentially permitted the Pardillas' attorney to make an oral presentation of their verified petition for rule to show cause. That presentation may have been sufficient to issue the rule to show cause, but it failed to satisfy the Pardillas' evidentiary burden. The burden remained theirs at the hearing on the rule to show cause. The proper procedure for a contempt hearing was not followed here. This error alone would require us to vacate the finding of contempt. "A failure to provide constitutional and procedural

guarantees results in vacatur of the contempt finding." *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 31.

¶ 45    Since we have found the contempt finding invalid, we must also vacate the subsequent award of attorney fees. See *Edwards*, 2023 IL App (3d) 210005, ¶ 51 (vacating attorney fee sanction when upon finding the corresponding contempt finding void).

¶ 46                                III. CONCLUSION

¶ 47    For these reasons, we dismiss the first appeal from the order granting a preliminary injunction as moot and dismiss the second appeal finding the Village in contempt but imposing no penalty as filed prematurely. Under the third appeal, we vacate the January 19, 2022, order finding the Village in contempt and vacate the June 29, 2022, order entering a judgment against the Village for the Pardillas' attorney fees.

¶ 48        No. 1-21-1580, Dismissed.

¶ 49        No. 1-22-0282, Dismissed.

¶ 50        No. 1-22-1148, Vacated.

---

*Pardilla v. Village of Hoffman Estates*, 2023 IL App (1st) 211580

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-50232; the Hon. John J. Curry Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Hal R. Morris, Elizabeth A. Thompson, and Thomas A. Laser, of Saul Ewing LLP, of Chicago, and Arthur Janura, of Arthur Janura, P.C., of Inverness, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Bryan P. Lynch, of Law Office of Bryan P. Lynch, P.C., of Chicago, for appellees. |

---