2026 IL App (1st) 250162-U

SECOND DIVISION
June 23, 2026

Nos. 1-25-0162 and 1-25-0915 (consolidated)

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE**
**APPELLATE COURT OF ILLINOIS**
**FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| ARAN HOLDINGS, LLC, MELCK HOLDING CORP., MELCK LAND & BUILDINGS, LLC, MELCK OPERATIONS, LLC, VYNERA TRANSPORTATION, INC., APU, INC., W.C.T.R., INC., W.S.T.R., INC., and G & V TOWING, INC., | ) Appeal from the<br>) Circuit Court of<br>) Cook County<br>)<br>) |
|     Plaintiffs-Appellants, | )<br>) |
|  v. | ) No. 2023 L 009986<br>) |
| JURGITA ARANAUSKAS, | )<br>) |
|     Defendant-Appellee, | )<br>) |
| (Melck Holding Corp. and Vytis Aranauskas, | ) Honorable<br>) Daniel J. Kubasiak, |
|     Contemnor-Appellants.) | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justice McBride and Justice Ellis concurred with the judgment.

**ORDER**

¶ 1   *Held*: We reverse the trial court's dismissal of plaintiffs' second-amended complaint and vacate the court's award of attorney fees to defendant. We decline to consider contemnor's contentions on appeal for lack of jurisdiction.

Nos. 1-25-0162 and 1-25-0915 (consolidated)

¶ 2    In this consolidated appeal, plaintiffs Aran Holdings, LLC (Aran), Melck Holding Corp. (Melck), Melck Land & Buildings, LLC (Melck Land & Buildings), Melck Operations, LLC (Melck Operations), Vynera Transportation, Inc. (Vynera), APU, Inc. (APU), W.C.T.R., Inc. (W.C.T.R.), W.S.T.R., Inc. (W.S.T.R.), and G & V Towing, appeal the trial court's orders dismissing their second-amended complaint with prejudice and awarding attorney fees to defendant Jurgita Aranauskas. On appeal, plaintiffs contend that dismissal of their complaint with prejudice was improper where the complaint adequately pled that Jurgita owed a fiduciary duty to them, and that she transferred confidential business information to plaintiffs' competitor. Alternatively, plaintiffs contend that the trial court should have granted leave to file a third-amended complaint. They also contend that the trial court's fee award was improper where (1) Jurgita was not entitled to indemnification of her defense costs under section 8.75 of the Business Corporation Act of 1983 (Act) (805 ILCS 5/8.75 (West 2024)), (2) she failed to establish the bases for the fees she requested, and (3) the trial court awarded the fees in full without analysis or explanation.

¶ 3    In the consolidated matter, contemnor-appellants Melck and Vytis Aranauskas appeal the trial court's order requiring Melck to advance Jurgita's defense costs pursuant to Melck's Shareholders' Agreement. They contend that Jurgita did not fall within the scope of the advancement provision, and that advancement under her circumstances would contravene public policy. For the following reasons, we reverse the dismissal of plaintiffs' second-amended complaint, vacate the court's order granting fees pursuant to Jurgita's petition, and decline to consider contemnors' appeal for lack of jurisdiction.

¶ 4                                I. BACKGROUND

¶ 5        Jurgita, Vytis, Justina Aranauskas, and Gytis Aranauskas each own 25 percent of plaintiff Melck. The remaining plaintiffs are either direct or indirect subsidiaries of Melck or share common ownership with Melck. Plaintiffs are engaged in the business of trucking transportation operations. Prior to her removal on September 15, 2023, Jurgita served as a director of Melck.

¶ 6                        A. *Dismissal of Plaintiffs' Second-Amended Complaint*

¶ 7        On September 29, 2023, Aran filed a complaint alleging that Jurgita, as a shareholder of Melck and manager of Aran, breached her fiduciary duty when she wrongfully transferred funds to a law firm client trust account. The complaint alleged that "on or prior to September 15, 2023," Jurgita learned that a motion was being called to remove her from her corporate position. The funds were later returned by an agreement executed on October 25, 2023, with no court finding of misconduct.

¶ 8        On February 13, 2024, nine plaintiffs, including Aran, filed an amended complaint alleging that Jurgita breached her fiduciary duty by disclosing confidential information to a competitor. Plaintiffs alleged that Jurgita had been in "an intimate relationship with Gytis Aranausakas," but now had a "new boyfriend" who also worked in the trucking industry. They alleged that Jurgita provided her boyfriend with "confidential information about Melck and its business operations" to give him "an unfair competitive advantage at the expense of Melck and its affiliates." Plaintiffs alleged that as a direct and proximate result of Jurgita's breach of duty, they suffered damages "in excess of $50,000."

¶ 9        The trial court granted Jurgita's motion to dismiss the amended complaint, finding that the complaint failed to sufficiently plead breach of duty where plaintiffs "lump[ed] themselves into one group without providing a specific factual basis for the cause of action" each sought to bring

against Jurgita. The court also found that plaintiffs failed to establish damages where they merely concluded that Jurgita's misconduct caused them damage without presenting "facts giving rise to these damages." The complaint was dismissed without prejudice and the court allowed plaintiffs to file a second amended pleading.

¶ 10     Plaintiffs filed a second-amended complaint on July 12, 2024. This complaint listed as plaintiffs only Melck, Melck Operations, Vynera, and APU. The complaint alleged that Jurgita was a shareholder of Melck with a 25 percent ownership interest, and that "[o]n or before September 15, 2023," she "served as a Director of Melck." Attached to the complaint was Melck's Shareholders' Agreement, which "was in full force and effect at all relevant times." The agreement stated that "Shareholders are actively involved in the business and affairs of the Corporation." Jurgita was listed as a shareholder.

¶ 11     Relevant to this appeal, the agreement provided that "[t]he Shareholders shall have the following fiduciary duties to the Corporation and to the other Shareholders ***:

5.10.1 <u>Non-compete; non-solicit.</u> In light of each Shareholder's access to Confidential Information (as defined below) and position of trust and confidence with the Company, each Shareholder further agrees that, during the Term and for three (3) years after a Shareholder ceases to be a Shareholder of the Corporation or of any Affililate of the Corporation, such Shareholder shall not, directly or indirectly through any one or more Affiliates, *** engage in any Unauthorized Competitive Activity ***.

In light of each Shareholder's access to Confidential Information and position of trust and confidence with the Corporation, each Shareholder further agrees that such Shareholder shall not, directly or indirectly through any one or more Affiliates, solicit or entice, or attempt to solicit and entice, any client, potential client and/or customer or

supplier of the Corporation *** for purposes of diverting their business or services from the Corporation, or such Affiliate during the Term and for three (3) years thereafter."

The agreement contained the following definitions:

"1.2 Unauthorized Competitive Activity

As used herein, the term "Unauthorized Competitive Activity" shall mean: (i) to call upon, divert, influence or solicit or attempt to call upon, divert, influence or solicit any customer or customers of the Corporation or its Affiliates; (ii) divulge the names and addresses or any unauthorized information concerning any customer of the Corporation or its Affiliates; (iii) to disclose any information or knowledge relating to the Corporation or its Affiliates, including but not limited to, Corporation['s] or its Affiliates' systems or methods of conducting business to any person, persons, firms, corporations, or other entities unaffiliated with the Corporation or its Affiliates ***;

* * *

1.6 Affiliate. As used herein, the term 'Affiliate' with respect to a specified person, means any Person that directly or indirectly controls, is controlled by, or is under common control with, the specified Person.

* * *

5.10.2 Duty of Confidentiality. *** Except as required in conducting the Corporation's or any of its Affiliates' business or by federal or state law, the Shareholders shall not disclose Confidential Information to any third party and shall return all copies of Confidential Information to the Corporation or its Affiliates immediately after the Shareholder ceases to be a Shareholder. For purposes of this Agreement, the term 'Confidential Information' means (i) the terms of the Articles of Incorporation of the

Corporation and this Agreement; (ii) information that the Corporation or any of its Affiliates treats as confidential; (iii) information that the Shareholder knows or should have known is proprietary to the Corporation or any of its Affiliates; (iv) financial information about the Corporation, its Directors, any of its Affiliates, or any of the Shareholders; (v) information about the Corporation's or any of its Affiliates' marketing, pricing, and business strategies; (vi) information about the methods of the Corporation's or any of its Affiliates' sales and services procedures; (vii) information about *** personnel, including Directors, Officers, employees, independent contractors, consultants, and agents; (viii) information entrusted to the Shareholders by the Corporation or any of its Affiliates, or by any of their respective Officers or Directors, that was identified as confidential as to a third party; and (ix) information designated by the Corporation or any of its Affiliates, or by any of their respective Officers or Directors, as Confidential Information."

¶ 12 The second-amended complaint alleged that as a result of her position as a director of Melck, Jurgita "had access to and control over significant aspects of the Plaintiffs' business operations, including their customer lists, financial management information, strategic planning and proprietary information ('Confidential Information')." The complaint alleged that, upon information and belief, (1) Jurgita began providing Melck's Confidential Information "to an individual who worked for a competitor of Vynera and APU," and who had previously worked for Vynera "but was fired after he was caught misappropriating funds from the corporation;" (2) Jurgita intended to support this competitor's business "by increasing its revenues and profits at the expense of Plaintiffs;" (3) after Jurgita was removed from her position of authority in Melck, she "knowingly and intentionally accessed and downloaded Plaintiffs' Confidential Information;" and

(4) Jurgita "knowingly and intentionally removed documents from Melck's office containing Plaintiffs' Confidential Information."

¶ 13    The second-amended complaint contained four identical counts of breach of fiduciary duty, one for each plaintiff. Each count alleged that Jurgita (1) had a fiduciary duty given her position in Melck; (2) she breached her fiduciary duty by "willfully and knowingly" accessing and downloading Melck's Confidential Information and "removing documents containing Melck's Confidential Information" for her "own personal use/interests;" and (3) she provided a competitor with Melck's Confidential Information and put her interests above that of Melck's shareholders. As a direct and proximate result of Jurgita's breach of duty, each plaintiff "has and will continue to suffer substantial harm, including but not limited to financial loss, loss of business opportunities, lost profits, reputational damage, loss of goodwill, and an interruption in its business operations."

¶ 14    Jurgita filed a motion to dismiss the second amended complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)). Plaintiffs filed a response asserting that they "have more than properly pled a cause of action" against Jurgita. On November 21, 2024, after briefing by the parties, the trial court granted the motion. The written order stated:

> "The Court notes that this is Plaintiffs [*sic*] third attempt at a sufficient pleading, but Plaintiffs continue to fail to adequately state a cause of action upon which relief can be granted. The Court finds that Plaintiffs have failed to adequately plead how Jurgita's fiduciary duties owed under the Shareholder Agreement extend to Melck Holdings' subsidiaries when Plaintiffs do not even plead that Jurgita had any involvement with those other entities. Further, Plaintiffs again fail to plead what Confidential Information was actually disclosed and to whom the information was disclosed. The Court finds that the

[second-amended complaint] makes Jurgita guess at what facts give rise to her supposed liability. As such, the Court grants Jurgita's Motion to Dismiss the [second-amended complaint] with prejudice."

¶ 15                                        B. *Motion for Advancement of Fees*

¶ 16    On June 17, 2024, before plaintiffs filed their second-amended complaint, Jurgita filed a motion for advancement of attorneys' fees and costs pursuant to Melck's Shareholders' Agreement. She alleged that as a shareholder of Melck, she was entitled to have her litigation costs covered pursuant to section 6.4 of the agreement. She sought $42,438.69 to cover litigation costs from March to May 2024. The trial court granted the motion in October 2024.

¶ 17    Melck filed a motion to reconsider the advancement order, and a hearing was held on November 25, 2024, after the court had granted Jurgita's motion to dismiss the second-amended complaint. The trial court denied the motion, in part, because it had dismissed plaintiffs' second-amended complaint with prejudice. The court reasoned that Jurgita could thus file a petition for attorney fees to determine whether she was entitled to such fees. In its written order, the court directed Melck to pay Jurgita $42,438.69 pursuant to her petition for advancement, on or before December 15, 2024. The court also ordered Jurgita to file her petition for attorney fees, "including the amount advanced *** on or before December 16, 2024."

¶ 18                                        C. *Contempt Proceedings*

¶ 19    When Melck failed to pay the advancement, Jurgita filed a petition for rule to show cause. The trial court issued a rule to show cause against Melck's president, Vytis, and ordered him to appear before the court on January 23, 2025. At the hearing, Melck and Vytis stipulated that Melck would intentionally violate the court's November 25, 2024 order, although it was able to pay the judgment amount. Melck and Vytis were held in contempt of court. In its written order, the trial

court found that contemnors "knowingly and willfully refused to comply" with the court's November 25, 2024 advancement order, and their conduct was "contumacious." The court imposed upon Melck a daily fine of $500 beginning on January 23, 2025, and continuing for seven days until January 30, 2025. Relevant to this appeal, the order stated that if Melck "files a notice of appeal of this contempt Order or pays the amount ordered by the Court's November 25, 2024 Order," plus prejudgment and post-judgment interest, "all fines imposed under Paragraph 2 shall be stricken." Contemnors timely filed their notice of appeal on January 29, 2025.

¶ 20                                D. *Jurgita's Fee Petition*

¶ 21    Per the trial court's order, Jurgita filed a petition for attorney fees on December 16, 2024. The petition sought fees and costs from Melck, Aran, Melck Land & Building, Vynera, W.C.T.R., and W.S.T.R. (collectively "indemnifying plaintiffs") pursuant to section 8.75(c) of the Act and contracts. To support her petition, Jurgita submitted declarations by herself and her attorney, Karen Levine, Melck's Shareholders' Agreement, the bylaws of Vynera, W.C.T.R., and W.S.T.R., the operating agreements of Aran and Melck Land & Building, the engagement agreement with her attorneys, and billing invoices for March 2024 to November 2024, December 2024 through January 2025, and February to March 2025. Jurgita later filed a supplement to the fee petition seeking fees and costs incurred after she filed the original fee petition. Indemnifying plaintiffs filed a response and Jurgita filed a reply to the response. We will address these filings in more detail as we consider plaintiffs' contentions on appeal.

¶ 22    On March 18, 2025, the court held a hearing on the fee petition. At the hearing, counsel for indemnifying plaintiffs argued that Jurgita was not entitled to fees where she did not act in good faith as evidenced by the funds she transferred and later returned, and the trial court never ruled on the merits of the complaint against Jurgita. Counsel also challenged the "block billing" used by

Jurgita's counsel and argued that the items listed in the block billing, such as "coordinating, filing, service and courtesy copies, internal emails and an internal conference," were not legal services. Counsel further argued that the rates charged by Jurgita's counsel were 20 to 30 percent higher than his firm's rates.

¶ 23    Ms. Levine's partner, William Katt, argued on behalf of Jurgita. He responded that block billing was "a common practice among law firms" and the entries in the petition "all relate to this case and the defense of this case." Counsel argued that his firm's rates were "well within the market for this type of case in Chicago." He also pointed out that "[p]laintiffs have been *** vigorously contesting the fee issues throughout this case, and the case almost has had a second life post judgment ***." Although the case began as a business dispute with complex claims and multiple parties, which was not unusual, "the second phase of this case has been almost another case in and of itself, because of the *** actions of plaintiffs and how they have litigated it."

¶ 24    After argument, the trial court found that Jurgita was entitled to fees. The court allowed each party to present "a proposed case management order addressing the most relevant facts and the most significant conclusions as to the entry of a fee petition." The court specifically asked plaintiffs to "give me a proposed order that addresses your reservations." Although the parties subsequently submitted their proposed orders, they are not included in the record on appeal.

¶ 25    On May 2, 2025, the trial court filed a 23-page ruling on Jurgita's fee petition. The court noted the evidence submitted in support of the petition, and that plaintiffs "submitted no counterevidence and did not request an evidentiary hearing." The court stated that its fact findings, conclusions of law, and the fee judgment "are based on the Court's review and consideration of the briefing and evidence submitted by the parties, the argument of counsel, the docket and filings throughout the case, and the Court's experience presiding over this case and otherwise."

¶ 26    The trial court found that Jurgita was entitled to fees pursuant to various agreements with indemnifying plaintiffs and under the Act. The court found that Jurgita was successful in defending against the claims because they were dismissed with prejudice. It also found that, "based on the evidence submitted, Jurgita acted in good faith." In her declaration, Jurgita stated that she did not disclose confidential information to any competitor and instead protected the information "in a manner she reasonably believed to be in the best interests of Plaintiffs." The court noted that plaintiffs "submitted no evidence to contest Jurgita's account."

¶ 27    The trial court also found that Jurgita acted in good faith regarding the disputed funds transfer at issue in the original complaint. In her verified response filed in those proceedings, Jurgita stated that she suspected waste and misconduct by others and retained a law firm to represent Aran. She transferred the funds to the firm's client trust account using excess Aran funds that were available after setting aside funds for tax payments and other financial obligations. She believed that she was acting in Aran's best interest at the time and later returned the funds in full by agreement. Aran "submitted no further evidence disputing Jurgita's explanation." Thereafter, Aran "elected to not pursue its claims against Jurgita based on the disputed funds." The trial court found Jurgita's stated motive for the transfer "credible."

¶ 28    Jurgita requested fees and costs in the amount of $186,859.48. The trial court noted that "Plaintiffs do not dispute that these fees and costs were actually incurred." The court identified three time periods relevant to the fee petition and the fees associated with each: (1) $48,417.19 for the period before the second-amended complaint was filed, (2) $40,418.76 for the period when the second-amended complaint was pending, and (3) $98,023.54 for the period after the second-amended complaint was dismissed.

¶ 29    The court noted that the requested fees and costs related to two distinct issues: Jurgita's motion to dismiss the second-amended complaint and her efforts to obtain an advancement for her legal defense. Since only Melck and Vynera were responsible for fees related to the second-amended complaint, the trial court "considered what portion of Jurgita's fees and costs relate to one issue versus the other." The trial court determined that the "costs of obtaining the advancement of fees are to be paid utilizing the amount received for the advancement."

¶ 30    Based on the trial court's "previous experience practicing in Chicago and experience reviewing fee petitions in other matters before it, the court awarded the full amount of $186,859.49 against Melck and Vynera, and $160,050.73 of that amount against Aran, Melck Land & Building, W.C.T.R., and W.S.T.R., with all amounts owed jointly and severally among the plaintiffs "to the extent of the award against it." The trial court found that the rates charged by Jurgita's attorneys were "within the range of usual and customary rates charged" in the Chicago area for comparable cases. The trial court also determined that "the time expended, tasks performed, and total amounts charged are all reasonable in light of the circumstances of the case."

¶ 31                    E. *Plaintiffs' Motion to Vacate/Reconsider Dismissal*

¶ 32    After hearing argument on Jurgita's fee petition, the trial court considered a motion filed by plaintiffs on March 12, 2025, six days prior. Plaintiffs sought to vacate the dismissal of their second-amended complaint and for leave to file a third-amended complaint. In response, Jurgita's counsel argued that although the filing was in the style of a motion to vacate, plaintiffs should have filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) because more than 30 days had passed since the dismissal. Counsel stated, "Maybe it's a Section 1401 petition. I'm not really sure what it is. If it's that, you know, we're happy to get a date to respond to a new proceeding. If it's not a 1401 proceeding, it should be denied." The trial court asked plaintiffs'

counsel whether they had appealed the dismissal of the second-amended complaint. Counsel clarified that they had only appealed the court's contempt order. The trial court replied, "Oh, that, okay. I'm going to deny your motion to vacate or reconsider." Plaintiffs' counsel answered, "Very good, your Honor. I understand."

¶ 33    Plaintiffs now appeal, and contemnors appeal the trial court's November 25, 2024 advancement order. We have consolidated the appeals.

¶ 34                                   II. ANALYSIS

A.  *Dismissal of Plaintiffs' Second-Amended Complaint*

¶ 35    Plaintiffs first contend that the trial court erred in dismissing their second-amended complaint with prejudice. Jurgita argues that we lack jurisdiction to review the dismissal where plaintiffs failed to file a notice of appeal raising the issue within 30 days of the dismissal. The timing for filing a notice of appeal is governed by Rule 303(a)(1), which provides:

"Except as provided * * * below, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, * * * within 30 days after the entry of the order disposing of the last pending post-trial motion." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

A dismissal with prejudice is usually considered a final judgment. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997). The record shows that the trial court dismissed the complaint with prejudice on November 21, 2024, and plaintiffs did not file a notice of appeal within 30 days. However, we disagree with Jurgita that we lack jurisdiction to consider the dismissal of plaintiffs' second-amended complaint.

¶ 36    Although plaintiffs did not file a notice of appeal within 30 days of that judgment, the dismissal of a complaint may be rendered non-appealable if there are multiple claims involved,

and the dismissal disposed of fewer than all claims. *Id.* Absent a finding that there is no just reason for delaying enforcement or appeal, any judgment that adjudicates fewer than all of the claims is not enforceable or appealable and may be subject to revision at any time before the entry of a judgment adjudicating all of the claims. *Id*. It is well-established that, where a trial court has jurisdiction to hear a claim for fees, any other judgment entered in the case before the fee petition is ruled upon becomes non-appealable when the claim for fees is made. *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983-84 (1994).

¶ 37     In this case, the trial court dismissed plaintiffs' second-amended complaint on November 21, 2024. On November 25, 2024, the trial court ruled on plaintiffs' motion to reconsider the advancement order. In denying the motion, the trial court also ordered Jurgita to file her fee petition by December 16, 2024, and she did so. The trial court retained jurisdiction to hear her claim for fees. While her fee petition was pending, plaintiffs filed their motion to vacate the dismissal of the second-amended complaint, which was denied. The trial court then ruled on Jurgita's fee petition on May 2, 2025. That judgment disposed of all remaining claims between the parties, and plaintiffs filed their notice of appeal on May 14, 2025. Therefore, we have jurisdiction to consider plaintiffs' contention.

¶ 38     The trial court dismissed plaintiffs' complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)). A section 2–615 motion to dismiss attacks "the legal sufficiency of a complaint based on defects apparent on its face." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). When ruling on a section 2–615 motion to dismiss, a court may consider only the facts that are apparent from the face of the pleadings, matters of which the court can take judicial notice and judicial hadmissions in the record. *Id.* We accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Marshall v. Burger*

*King Corp.*, 222 Ill. 2d 422, 429 (2006). However, mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2–615 motion to dismiss. *Pooh-Bah Enterprises*, 232 Ill. 2d at 473. "[T]he requirement that a complaint set forth facts necessary for recovery under the theory asserted is not satisfied, in the absence of the necessary allegations, by the general policy favoring the liberal construction of pleadings." *Teter v. Clemens*, 112 Ill. 2d 252, 256–57 (1986). We review the trial court's dismissal of a complaint pursuant to section 2–615 *de novo*. *Id.*

¶ 39    Plaintiffs' second-amended complaint alleged that Jurgita breached her fiduciary duty to plaintiffs as a shareholder and director of Melck. To state a claim for breach of fiduciary duty, plaintiffs must allege sufficient facts showing that (1) Jurgita owed plaintiffs a fiduciary duty, (2) she breached that duty, and (3) plaintiffs suffered damages as a proximate result of that breach. *Workforce Solutions v. Urban Services of America, Inc.*, 2012 IL App (1st) 111410, ¶ 82.

¶ 40    The trial court's order provided two reasons for dismissing the second-amended complaint as to all plaintiffs, including Melck. First, the trial court found that the complaint "failed to adequately plead how Jurgita's fiduciary duties owed under the Shareholder Agreement extend to Melck Holdings' subsidiaries ***." The court's order, however, did not mention Jurgita's fiduciary duty to Melck itself. As a corporate officer of Melck, Jurgita owed a fiduciary duty of loyalty to not exploit her position for her own personal benefit or hinder Melck's ability to continue its business. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1993). As such, even if plaintiff's complaint did not sufficiently plead a fiduciary duty to Melck's subsidiaries, it did sufficiently plead that Jurgita owed a fiduciary duty to Melck.

¶ 41    Second, the trial court found that "Plaintiffs again fail to plead what Confidential Information was actually disclosed and to whom the information was disclosed." However,

although the second-amended complaint did not specify exactly what information was disclosed, it did allege that Jurgita "had access to and control over significant aspects of the Plaintiffs' business operations, including their customer lists, financial management information, strategic planning and proprietary information ('Confidential Information')." If evidence is presented at trial that Jurgita improperly conveyed information such as customer lists, financial management information, strategic planning or proprietary information to a competitor, a factfinder could determine that she breached her fiduciary duty to Melck.

¶ 42    Neither of the reasons provided by the trial court for dismissing the complaint applied to Melck. Since the trial court did not distinguish Melck when it dismissed the second-amended complaint as to all plaintiffs, we find that dismissal pursuant to section 2-615 was erroneous and reverse the judgment. See *Pooh-Bah Enterprises*, 232 Ill. 2d at 473 (noting that "[a] cause of action should not be dismissed pursuant to a section 2–615 motion unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief"). On remand, plaintiffs shall have an opportunity to replead. However, they should carefully consider the relationship between Jurgita and Melck's subsidiaries if they plan to allege a breach of fiduciary duty she owed to them.

¶ 43    Due to our disposition on this issue, we need not consider plaintiffs' alternative contention that the trial court erred in denying plaintiffs' motion for leave to file a third-amended complaint.

¶ 44    We also vacate the trial court's order granting fees pursuant to Jurgita's petition seeking indemnification under section 8.75 (c) of the Act (805 ILCS 5/8.75 (c) (West 2024)), where the provision provides for indemnification "[t]o the extent that a present or former director, officer or employee of a corporation has been successful, on the merits or otherwise, in the defense of any action, suit or proceeding referred to in subsections (a) and (b), or in defense of any claim, issue or matter therein ***." *Id.* Jurgita's "success" in the proceeding below was premised on the

dismissal of plaintiffs' second-amended complaint with prejudice. Since we are reversing that judgment, Jurgita's fee petition seeking indemnification has been rendered premature.

¶ 45                    B. *Jurgita's Motion to Dismiss Contemnors' Appeal*

¶ 46    We now address Jurgita's motion to dismiss contemnors' appeal of the judgment requiring Melck to advance Jurgita's defense costs, which we have taken with the case. On November 25, 2024, the trial court ordered Melck to pay Jurgita $42,438.69 as an advancement of her defense costs. Melck intentionally refused to pay, and the trial court subsequently held Melck and its president, Vytis, in indirect civil contempt for their failure to comply with the November 2024 order.

¶ 47    Jurgita contends that the contempt order was not appealable because no sanction was ultimately imposed pursuant to the contempt finding. She points out that although the trial court imposed a daily fine, that fine was automatically stricken because contemnors filed their notice of appeal within seven days as the order instructed.

¶ 48    Rule 304(b) allows for appeals of orders "finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). "The imposition of a sanction for contempt is final and appealable because, although occurring within the context of another proceeding and thus having the appearance of being interlocutory, it is an original special proceeding, collateral to and independent of, the case in which the contempt arises." *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172 (1981). Therefore, a court's finding of contempt, without the imposition of sanctions, is not appealable. *Padilla v. Village of Hoffman Estates*, 2023 IL App (1st) 211580, ¶ 28; *Vowell v. Pedersen*, 315 Ill. App. 3d 665, 666 (2000).

¶ 49    Here, the trial court's order finding contemnors in contempt imposed a sanction: a "daily fine" of $500 starting on January 23, 2025, and continuing until January 30, 2025. However, that

order also provided that if contemnors filed a notice of appeal within seven days, "all fines imposed *** shall be stricken." Contemnors filed a timely notice of appeal, and their actions effectively transformed the trial court's order into one finding contempt without the imposition of sanctions. Without the entry of a contempt order imposing a sanction, this court has no jurisdiction to review the contempt judgment because the order was not final and appealable under Rule 304(b)(5). *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008).

¶ 50                                    III. CONCLUSION

¶ 51    For the foregoing reasons, we reverse the judgment of the circuit court dismissing plaintiffs' second-amended complaint and remand for further proceedings consistent with this order. We lack jurisdiction to consider contemnor's contention on appeal.

¶ 52    Reversed and remanded, with directions.